Burnett *v. Mayor* and Common Council of the City of Sacramento.

BURNETT *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF SACRAMENTO.

Where the Charter of the City of Sacramento authorized the Common Council to levy a special assessment for grading and improving the streets of the city, and provided, that when the Council thought it expedient to open, alter or improve any street, they should give notice, etc., and if one-third of all the owners in value of the adjacent property protest against the proposed improvement within ten days after the last publication, it shall not be made; and a protest was presented more than ten days after the last publication of such notice : *Held*, that such protest was not presented in time, and was therefore ineffectual; further *Held*, that it must appear that one-third of the owners in value of the adjacent property united in it.

An Ordinance for the improvement of the streets passed by the Council before the expiration of the time for the presentation of the protest, is not thereby invalid.

The statute only inhibits the Council from proceeding with the improvement in case of such protest, and it was competent for them to pass the ordinance in advance of the time, provided they did not attempt to enforce it until afterwards.

That provision of the Charter authorizing the improvement, and the mode and manner of the assessment, is not in conflict with the 13th Section of Article XI of the Constitution of this State.

That section provides for equality and uniformity of taxation upon property, but applies only to that charge or imposition upon property which it is necessary to levy to raise funds to defray the expenses of the Government of the State, or of some county or town. It has no reference to special assessments for local improvements, by which individual parties are chiefly benefited in the increased value of their property, and in which the public is only to a limited extent interested.

For the expenses of such improvements, it is competent for the Legislature to provide, either by general taxation upon the property of all the inhabitants of the county or town in which they are made, or upon property adjacent thereto, and specially benefited thereby.

The power of apportionment, with the power of taxation, is exclusively in the Legislature. The Constitution contains no inhibition to the tax, and prescribes no rule of apportionment.

APPEAL from the Sixth District, County of Sacramento.

This was an action brought to recover of the City of Sacramento money paid by plaintiff, as an assessment upon his lots, for the grading and improving the streets adjacent thereto. The following facts appear in the opinion of the Court:

By the second section of the Act of March, 1853, amending the Charter of Sacramento, the Common Council of the city are authorized to levy, by ordinance, special assessments for grading or otherwise improving any portion of the streets or alleys of the city on the adjacent property situated on the line of the improvement.

By the third section of the Act of April, 1853, " to extend and better define the powers of the City Council," it is provided, that whenever the Common Council shall think it expedient to open, alter or improve any street or alley, they shall give notice thereof by publication, for ten days, in some daily paper published in the city ; and, should one-third of all the owners in value, as shown by the last general assessment of the adjacent property, protest against the proposed improvement within ten days after the last day of publication, then it shall not be made ; but otherwise, the Common Council shall proceed with the improvement, the expenses of which shall be borne by the adjacent property.

Under the authority of these sections, the Common Council, on the thirtieth of July, 1855, passed an ordinance requiring notice to be given that they thought it expedient to improve K street, between Eighth and Twelfth streets, by grading it, and directed publication of the notice for ten days in the *Tribune*, at that time a daily newspaper of the city. The ordinance was approved by the Mayor on the following day. The notice was published for the required period, the last publication being on the fifteenth of August ; and on the twentieth of August, no protest or remonstrance having in the meantime been made, the ordinance for the improvement was passed, and on the twenty-first was duly approved. Defendant had judgment, and plaintiff appealed to this Court.

*John Heard* for Appellant.

I. The assessment is not a legitimate exercise of the taxing power, but an order of the Council to appropriate certain private property to

public use without just compensation, and is a direct violation of section 8, article 1st of the State Constitution.

It is not a tax, because it is not a common burden imposed upon any State, county, town, village, district or other local public, known to the law. There is therefore no uniformity or equality in the assessment. See 5th Dana, 28 ; 9 Dana, 114 and 512 ; 6 Barbour's Sup. Ct. Rep. 209, and sec. 13, article XI State Constitution.

Sec. 13, art. XI of the Constitution provides : " Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law ; but Assessors and Collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property assessed for State, county or town purposes is situated." It is evident that the members of the Convention did not contemplate any subdivision of the districts or local publics named in this section ; and I insist that the Legislature, much less the Common Council, cannot subdivide a city or county into districts, for the purpose of taxing the districts, without violating the letter and spirit of this section of the Constitution in many of its most valuable provisions ; and I will suggest three of the leading principles of this section of the Constitution which would be violated by such a subdivision.

1st. The tax would not be *equal* and *uniform.*

2d. The Assessors and Collectors of the tax would not be elected by the qualified electors of the district taxed. Consequently the Assessors and Collectors would not owe that responsibility to the persons to be taxed which the Constitution contemplates.

3d. The taxing power (the City Council) is not elected by or responsible to the persons taxed, which is a clear violation of the spirit and intention of this provision of the Constitution.

To recognize such a power in the Council would be to disregard a fundamental principle in our Government—that is, that taxation and representation should go together ; and to substitute for equality and uniformity in taxation, gross inequality and private plunder.

II. The provision of the 3d section of the Act amendatory of the Charter of the City, (Compiled Laws, p. 969) are restrictions upon the power of the Common Council to improve and to tax ; and unless

these restrictions are complied with, the action of the Council is unauthorized and void. Notice of their intention to improve is therefore essential to the validity of their ordinance to improve. In this case no legal or sufficient notice was given of the intention of the Common Council to improve; for by the most favorable computation of time, the Council passed the ordinance two days before they had lawful right to do so, and the ordinance was approved by the Mayor at least one day before it could lawfully be passed; nor does their proceedings upon some remonstrances after the passage of the ordinance give it vitality. No notice of an intention to receive remonstrances was given after they passed the ordinance, consequently those interested could not then be expected to remonstrate.

These are the principal points arising from the record in this case; and while I cheerfully admit that there are respectable authorities opposing the first point which I have made, I do insist that the view that I have taken of the want of Constitutional authority to levy such an assessment is most consonant with the spirit of our Constitution, with sound philosophy and the weight of authority.

I will say, in conclusion, that the position assumed by the learned counsel of the respondents at the trial, that " there is a third mode of taking private property for public use, to wit, by assessment," is so *new*, and so destitute of either reason or authority, that I have not thought proper to answer it.

All the cases that I have met with assume, that taxation and the right of eminent domain are the only means of divesting a citizen of his property for public use.

*Winans & Moore* for Respondent.

I. The statute under which respondents acted was Constitutional.

A statute which authorizes a municipal corporation to grade and improve streets, and to assess the expense among the owners and occupants of lands benefited by the improvement, in proportion to the amount of such benefit, is a Constitutional and valid law. The People *v.* The Mayor, etc., 4 Comstock, 419, 429, *et seq.* (overruling People *v.* Mayor, etc., 6 Barbour, 209, cited by appellant); People *v.* Coleman, 4 Cal. 46; Extension of Hancock street, 18 Penn. State, (6

Harris) 26 ; City of Lexington v. McQuillon, 9th Dana, 523 ; People v. Naglee, 1 Cal. 252, 253; which last case we think is decisive of the point.

II. The proceedings of respondents, as shown by the record, were in entire conformity with the requirements of the statute.

These proceedings were instituted and perfected under an Act defining the powers of the Council of the City of Sacramento, passed April 26, 1853.   Compiled Laws of Cal. 968, 969.

The proceedings of respondents were had and taken under sec. 3 of that Act, which provides, that " when the Common Council shall think it expedient to improve a street or alley, they shall give notice thereof by publication for ten days in some daily paper published in said city."

Should one-third of all owners in value, as shown by the last general assessment of the adjacent property, protest against the proposed improvement within ten days after the last day of said publication, it shall not then be made.   If no such protest be made, the Common Council shall proceed with such improvement, the expenses of which shall be borne by the property adjacent.

Thus it will be perceived, that the Council are required to give ten days' notice of their intention to improve a street or alley, in a daily paper published in said city ; and after the expiration of such ten days, a further period of ten days is allowed for protest or remonstrance on the part of owners.

The record shows that the ordinance giving notice of intention to improve the street in question, was passed by the City Council July 30th, 1855, and published in the *Tribune*, a daily newspaper of said city, from August 1st to August 15th of said year inclusive.

Thus, the ten days' notice required by the statute extended from August 1st to August 10th inclusive, and the further ten days' time allowed to owners to protest or remonstrate extended from August 10th to August 20th inclusive.   The transcript further shows that the ordinance to improve said street (no protest or remonstrance having been made or filed) was passed by the City Council on the night of August 20th, at half-past ten o'clock, P. M., and approved by the Mayor August 21st.

It is not pretended by appellant that any protest whatever against

such improvement was made by owners during the ten days allowed by the statute, and the transcript shows that no such protest was filed until August 27th, six days after the expiration of the statutory time. The protest, therefore, was a nullity, and entirely ineffectual. Moreover, an inspection of the record will show that one-third of the owners in value did not unite in protesting against the improvement. This, however, was unimportant, as the protest was not made in time, and therefore null. But appellant contends, that inasmuch as the owners of adjacent property were allowed by the statute until the expiration of the twentieth of August to protest, the City Council had no right to act until the twenty-first, and, therefore, the ordinance that they passed on the night of the twentieth, directing the improvement in question, was a nullity, and that, therefore, respondents cannot enforce payment from the owners for the improvement subsequently made.

To this we answer : *First.* That the said ordinance was not approved by the Mayor, and therefore did not take effect until the twenty-first, when it first became a law ; and, *Secondly.* The statute does not prohibit the Council from " making an ordinance " within the ten days allowed for the protest, directing the improvement, *but* from " making the improvement" itself within that time. It was perfectly competent, therefore, for the Council at any time after the expiration of the ten days' notice given by them, to pass an ordinance directing the improvement, provided they did not attempt to enforce such ordinance, nor proceed with the improvement, until the ten days allowed for protest had expired, and of course not then, if any statutory protest had been presented within that time. In other words, the statute does not render the ordinance ordering the improvement, but " the making" of the proposed improvement, the substantial thing. The record shows that the contract for doing the work was not made till September 7th, nor approved by the Council till September 10th, and the work was not commenced till a long period after that. From which facts we gather the following conclusions :

*First.* One-third of the owners did not protest against the proposed improvement.

*Second.* No protest was made within the statutory time of ten days.

*Third.* Respondents duly advertised the proposed improvement for ten days.

*Fourth.* After the expiration of such ten days, they waited more than ten days longer before they proceeded with the proposed improvement.

*Fifth.* The ordinance which they passed on the twentieth of August, and which was approved upon the twenty-first, was neither " a making of " nor a " proceeding with " the proposed improvement.

We submit, therefore, that the proceedings of respondents were in all respects regular, and that the judgment should be affirmed.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BALDWIN, J., concurring.

The protest presented on the twenty-seventh of August was ineffectual, for the reason that it was not made until after the expiration of the statutory time, and the further reason that it does not appear that one-third of the owners in value of the adjacent property united in it. The passage of the ordinance on the twentieth, and its approval on the twenty-first, are of no consequence. Its validity is not affected, even if it were passed and approved before the expiration of the time limited for protest. The statute only inhibits the Council from proceeding with the improvement in case of such protest, and it was competent for them to pass the ordinance in advance of the time, provided they did not attempt to enforce it until afterwards. The contract for the work was not made until September 7th, or approved until September 10th, and the work was not commenced until some time afterwards.

The case before the Court is thus stripped of all objections to the regularity of the proceedings of the Common Council, and the appeal must be determined upon the constitutionality of the provisions of the law under which the defendants acted. The contemplated improvement was made, the street was graded, and the expenses were assessed upon the adjacent property. The amount levied upon the property of the plaintiff, was two hundred and ten dollars. This he paid under protest to prevent a sale, and now brings his action to recover back the money.

The appellant contends that the law in authorizing special assessments for the expenses of improvement upon the adjacent property,

conflicts with the eighth section of Article I of the Constitution, which provides that private property shall not be taken for public use, without just compensation, and the thirteenth section of Article XI, which provides that taxation shall be equal and uniform throughout the State.

Whether the taking of private property in the opening of a street, and the apportioning of the expenses among the owners of adjacent property would be within the prohibition of the eighth section of the first article of the Constitution, it is unnecessary to determine. Our impressions are, that it would not be if such expenses were assessed upon the property in proportion to the amount of benefit produced; but this question does not properly arise in the case at bar. Here there has been no exercise of the right of eminent domain. No private property of the plaintiff has been taken for public use. His land remains untouched. The street was previously opened, and it is that which has been improved by grading. The assessment is the tax levied to meet the expenses of the improvement. Money is not that species of property which the sovereign authority can authorize to be taken in the exercise of its right of eminent domain. That right can be exercised only with reference to other property than money, for the property taken is to be the subject of compensation in money itself, and the general doctrine of the authorities of the present day is, that the compensation must be either made, or a fund provided for it in advance.

The assessment, therefore, must rest for its validity upon its being a legitimate exercise of the taxing power. The thirteenth section of Article XI of the Constitution does not cover the case. That section provides for equality and uniformity of taxation upon property, but applies, in our judgment, only to that charge or imposition upon property which it is necessary to levy to raise funds to defray the expenses of the Government of the State, or of some county or town. We do not think it has any reference to special assessments for local improvements, by which individual parties are chiefly benefited in the increased value of their property, and in which the public is only to a limited extent interested. For the expenses of such improvements, it is competent for the Legislature to provide, either by general taxation upon

the property of all the inhabitants of the county or town in which they are made, or upon property adjacent thereto and specially benefited thereby. The law in question places the burthen upon the adjacent property, which is a far more equitable apportionment than if imposed upon the entire property of the city. There would, indeed, be manifest injustice in levying a general tax for a local improvement which produces a great benefit to the owners of property in its vicinity, but lessens, perhaps, at the same time, the value of property at a distant part of the city. In such taxation there would be no equality. "It is wrong," says Ruggles, J., in delivering the opinion of the Court of Appeals of New York, in The People *v.* the Mayor of Brooklyn, (4 Coms. 419) " that a few should be taxed for the benefit of the whole, and it is equally wrong that the whole should be taxed for the benefit of a few. No one town ought to be taxed exclusively for the payment of county expenses; and no county should be taxed for the expenses ·incurred for the benefit of a single town. The same principle of justice requires, that where taxation for any local object benefits only a portion of a city or town, that portion only should bear the burthen. There being no Constitutional prohibition, the Legislature may create a district for that special purpose, or they may tax a class of lands or persons benefited, to be designated by the public agents appointed for that purpose, without reference to town, county or district lines. General taxation for such local objects is manifestly unjust. It burthens those who are not benefited, and benefits those who are not burthened. This injustice has led to the substitution of street assessments, in place of general taxation; and it seems impossible to deny that in the theory of their apportionment, they are more equitable than general taxation, for the purpose they are designed for.

The law in question avoids the injustice of general taxation for local purposes, and lays the burthen upon the recipients of the benefit. It apportions the tax according to the assessed cash value of the adjacent property, which is as near an approximation to an equitable rule as can well be established. No rule could be adopted which would work absolute equality. An approximation to it is all that can be attained. The power of apportionment, with the power of taxation, is exclusively in the Legislature. The Constitution contains no inhibition to the tax,

and prescribes no rule of apportionment.   Security against the abuse of the power rests in the wisdom and justice of the members of the Legislature, and their responsibility to their constituents.   See the People *v.* the Mayor of Brooklyn, 4 Comstock, 419, and the cases cited in the opinion of the Court and the briefs of counsel, which latter are in the appendix to the volume, 607.

Judgment affirmed.