The complaint in substance alleges that, under the act of 1895, chapter 75, entitled "An act to establish a criminal circuit court to be composed of the counties of Buncombe, Madison, Haywood and Henderson," the plaintiff, at the general election in November, 1896, was duly elected and qualified as clerk of said criminal court for Buncombe County for four years, and entered upon his office on the first Monday in December, *Page 434 
1896, and that his term was not yet expired; that the defendant, under color of an appointment by the Judge of the "Western Criminal District Court," had entered upon, usurped and illegally taken possession of his office, and ejected him therefrom, his Honor, the judge making the appointment, claiming to act under the authority of several acts of the Legislature of 1899, viz.: the act of 27 February, entitled "An act to abolish the Criminal Circuit Court, composed of the counties of Buncombe, Madison, Haywood, Henderson and McDowell"; the act of 3 March, entitled "An act to establish the Western District Criminal Court"; and the act of 6 March, entitled "An act to abolish the Criminal Circuit, composed of the counties of Buncombe, Madison, Haywood, Henderson, and McDowell"; that none of the acts, separately or combined, had the legal effect of abolishing the office which had been given to plaintiff by the people, and out of which he had been wrongfully ousted, and he asks to be reinstated.
The defendant demurred to the complaint, claiming the office of clerk by the appointment of the judge under authority of the acts of the session of 1899, cited in the complaint.
The court sustained the demurrer, and rendered judgment (685) dismissing the complaint.
The plaintiff excepted and appealed.
The Legislature of 1895, chapter 75, established criminal courts in Buncombe, Haywood, Henderson and Madison counties. These courts only had criminal jurisdiction. It was provided in that act that these counties should compose a criminal circuit, and that there should be a judge elected, styled a criminal circuit judge, who should preside over and hold these courts.
The Legislature of 1897 (chapter 6) amended the act of 1895 by giving these courts a civil as well as criminal jurisdiction, and by changing the name to "Circuit" instead of "Criminal Circuit Courts." And the same Legislature (chapter 7) created a similar court in McDowell County, with the same jurisdiction of those of Buncombe, Henderson, Haywood and Madison, and placed it in the "Circuit" with those counties, and to be held by the same judge. Under this legislation these courts were organized, a judge and clerks elected by the people. The plaintiff, being elected for the county of Buncombe, gave his bond *Page 435 
and was inducted into office as clerk for a term of four years, which has not expired; and the plaintiff is still entitled to this office, unless he has been removed therefrom by the legislation of 1899.
The Legislature of 1899, by an act passed 27 February, enacts as follows: "Section 1. That the Criminal Circuit Court, composed of the counties of Buncombe, Madison, Haywood, Henderson and (686) McDowell, be, and the same are hereby, abolished"; and it provides that all the business pending in those courts be transferred to the Superior Courts of their respective counties; that on 3 March, four days thereafter, the Legislature passed another act, entitled "An act to establish the Western District Criminal Court." This act is elaborately drawn, being almost a perfect copy of the act of 1895, except as will be pointed out hereafter; and on 6 March, three days after the passage of the act to "establish the Western District Criminal Court," the Legislature passed another act, entitled "An act to abolish the Criminal Circuit composed of the counties of Buncombe, Madison, Haywood, Henderson and McDowell."
If the act of 27 February, 1899, stood alone, we would hold that it "abolished" the Criminal Court of Buncombe County, though it does not say that it abolishes this court. It says "that the Criminal Circuit Court," composed of the counties of Buncombe, Madison, Haywood, Henderson and McDowell, is abolished. If no other act had been passed reestablishing this court, the intention of the Legislature would be manifest, and it would be our duty to hold that this court was "abolished." If the Criminal Court of Buncombe County has been abolished and not restored by this legislation, the clerkship being but an incident depending on the existence of the court, it is also abolished, and the plaintiff has no office and no right to maintain this action. If it is claimed that the act of 6 March is the act that abolished this court, then the act of 3 March was passed when plaintiff was in office, and the act of 3 March legislated him out of it.
The act of 3 March, as we have said, is almost an exact copy of the act of 23 February, 1895, and, so far as the powers and (687) jurisdiction and territorial extent of the courts established by the two acts are concerned, they are the same.
The act of 1899 differs from the act of 1895 in these respects: It is extended to the counties of Burke, Surry, Yancey, Forsyth and Caldwell. It provides that the commissioners of the counties, included in this act, shall not draw less than twelve nor more than twenty-four jurors for the first week of the Superior Courts embraced in this criminal circuit. It provides a solicitor to be appointed by the judge for the most of the counties embraced in the circuit. It provides that these solicitors, so appointed by the judge of this criminal circuit, shall go *Page 436 
into the Superior Courts and prosecute for the State. It increases the judge's salary from $1,800 to $2,750; and while it provides for the appointment of clerks, it fails to provide that he shall enter into bond for the discharge of his duties, and it fails to provide any fees for the clerk, except as may be provided in section 13 of the act, which is as follows: "That it shall be the duty of the board of county commissioners of each of said counties to provide for the payment of fees of the solicitor and the fees and compensation of the clerks and the sheriffs of said counties respectively, and the pay of jurors and witnesses as is now provided by law, and all other expenses incident to said court, by order on the county treasurer of said respective counties." And it only vests the court with criminal jurisdiction, as did the act of 1895, before the amendment of 1897. If there be other changes made in the act of 1895 by the act of 1889, they are of minor importance, or have escaped our attention.
All acts of the same session of the Legislature upon the same subject-matter are considered as one act, and must be construed (688) together, under the doctrine of "In pari materia." S. v. Bell, 25 N.C. 506; Black on Interpretation of Laws, sec. 86; Endlich on Interpretation of Laws, sec. 45; 20 Tex. 355. They should be consideredin pari materia, whether passed at the same session or not. Simonton v.Lanier, 71 N.C. 478; Rhodes v. Lewis, 80 N.C. 136.
Where a former act has been repealed or has expired by its limitation, when it is in pari materia, it must be considered in connection with the last act, and, if necessary, a part of it. Potter's Dwarris, 190. "It certainly appears strange," said Williams, J., in a late case, "that when an act of Parliament is per se `abolished,' it shall virtually have effect through another act. But in that case the former act was substantially reenacted. Reg. v. Merionethshire, 6 Adol. and Ellis, 343. It does indeed seem to be the prevailing doctrine (and it is more rational in itself than consistent with coeval maxims) that where one statute refers to another, which is repealed, the words of the former act must still be considered as if introduced into the latter statute." Potter's Dwarris, p. 192.
In Rex v. Laxdale, 1 Burr., 445, it is held (Lord Mansfield delivering the judgment of the Court), "That where there are different statutes inpari materia though made at different times, or even where they have expired, and not referring to each other, they shall be taken and considered together as one system, and as explanatory of each other." The same doctrine is held in New York. Smith v. People, 47 N.Y. 330, which is very much in point.
It is now seen that the acts of 27 February, 3 March, and 6 March, 1899, were passed in rapid succession by the same session of the Legislature; that the act of 3 March is in substance a reenactment of the *Page 437 
act of 1895; that they are in pari materia, and must be construed (689) as one act. Thus considered, it becomes a matter of judicial construction as to the effect of this legislation upon the office of clerk of the Criminal Court of "Buncombe County." To enable us to do this, it becomes necessary to consider the whole act of 3 March, 1899, in connection with the other acts, although some parts of them do not directly bear upon the clerkship of Buncombe County, for the purpose of properly understanding and construing them.
The third section of the act of 3 March, 1899, provided: "That the said courts shall have exclusive original jurisdiction to inquire of, hear and try all crimes, misdemeanors and offenses committed in the counties of Buncombe," etc. This takes away from the Superior Courts all original jurisdiction in criminal cases, and it takes from justices of the peace all criminal jurisdiction, as they have no appellate jurisdiction — their jurisdiction being only original. This would seem to be in conflict with Article IV, section 27 of the Constitution, which expressly provides that "Justices of the peace shall have jurisdiction of all criminal matters arising within their counties where the punishment cannot exceed a fine of fifty dollars or imprisonment for thirty days." The section further provides "that in all criminal matters the party against whom judgment is given may appeal to the Superior Court, where the matter shall be heard a new." It (the act of 1899) further on, in the same section, provides that these criminal courts shall have jurisdiction of all these crimes and offenses "fully and to the same extent as the Superior Courts of the State." But this does not seem to limit their exclusive jurisdiction, but to declare the extent of their power, their jurisdiction, to try and dispose of these matters. Whether this act, taking from the Superior Court its criminal jurisdiction as provided by section 12, Article IV of the Constitution, is in conflict (690) with the Constitution, it is not necessary for us to decide in this case, and we simply refer to Rhyne v. Lipscombe, 122 N.C. 650, and Cooley Const. Law (6 Ed.), 156. The question of apparent conflict with the Constitution is more directly presented in the 18th section of the act which provides that the county commissioners shall draw not less than 12 nor more than 24 jurors for each week of the Superior Court. We had a jury system here before, and at the time of the adoption of all our Constitutions — a grand jury of 18 and petit jury of 12. Our Constitution and judicial system must have recognized this policy — this law of the organization of our Superior Courts. Rhyne v. Lipscombe and Cooley, supra. Superior Courts are established by the Constitution and cannot be abolished by the Legislature. Nor can the Legislature deprive them of their rightful jurisdiction. The Legislature may give other courts a part of the jurisdiction of the Superior Courts, *Page 438 
but it cannot deprive them of their constitutional jurisdiction. Here are nine counties where the commissioners may refuse to draw more than 12 jurors. It would be impossible for the court to draw a grand jury of 18 out of a panel of 12 jurors. But it is said we have provided a criminal court for these counties to try criminal offenses. That is so. But we are discussing the constitutional question — the right of the Legislature to dismantle and disable the Superior Courts. If the Legislature has the right to do this in these nine counties, it has the right to do so in any other nine counties, or in all the other counties in the State. And the fact that they have established a criminal court in these counties does not affect the question of their constitutional power to destroy the criminal jurisdiction and usefulness of the Superior (691) Courts. If the Legislature has the power to do this in counties where it has established criminal courts, it has the power to do so in counties where there are no criminal courts. It would seem that it might divide the jurisdiction between the Superior Courts and inferior courts, but it cannot destroy the constitutional jurisdiction of the Superior Courts.
But section 5 of the act of 1899 provides that the solicitors of these criminal courts, appointed by the judge of these criminal courts, shall prosecute for the State in the Superior Courts, and receive the fees, in case of conviction, that the solicitors of the Superior Courts are entitled to. This would seem to be in direct conflict with section 23, Article IV of the Constitution, which provides that "A solicitor shall be elected for each judicial district by the qualified voters thereof, as is provided for members of the General Assembly, who shall hold office for the term of four years, and prosecute on behalf of the State in all criminal actions in theSuperior Courts."
These provisions of the act — some of them so plainly in conflict with the Constitution — and the imperfections of the act in failing to provide for any fees for the clerk, and in failing to provide that he shall give bond, are referred to for the purpose of showing that, as an independent act, it would be incomplete and imperfect legislation. But to treat the three acts together, in pari materia, as it seems to us they must be treated under the authorities we have cited, they then become but amendments to the act of 1895. There are no clauses in these acts but what could be, and would be, by all the rules of interpretation, treated as amendments to the act of 1895, except that which declares that the court is abolished. This does not make it so, if it is not so. Treating them as amendments does not cure any violations of the Constitution.
It was declared in the act of 1895, with regard to the Insane Asylum, that the board of directors was abolished, and this Court held (692) that it was not. Wood v. Bellamy, 120 N.C. 212. The act *Page 439 
of 1899, with regard to the penitentiary, declared the office of superintendent abolished, and this Court held that it was not. StatePrison v. Day, ante, 362. It is shown by the authorities cited, and quoted above, that these opinions are in line with the text-writers, and with English and American adjudications. Taking out of these acts the sentence that the "Court is hereby abolished," and everything else would be properly construed as amendatory. Although these courts were put into a "Criminal Circuit" by the act of 1895, and into a "Circuit Criminal" by the act of 1899, that makes no difference. The court of each county embraced in the "Circuit" is a separate and independent court — the court in one county in no way depending upon the court in another county. The fact that the circuit was enlarged and more counties included in it, makes no difference. The court in Buncombe County is just the same as it was before other counties were included. The act of 1897 put McDowell County in that circuit, but this did not abolish or change the criminal court of Buncombe County. The Superior Courts of one county have frequently been taken out of one judicial district and put in another, and judicial districts have been changed so as to include more counties; and this did not abolish the court or change the powers or jurisdiction of the court. The fact that the act of 1899 did not undertake to establish civil jurisdiction, attempted to be given by the amendatory act of 1897, nor the fact that it provides for appeals to the Superior Courts instead of the Supreme Court, makes no difference, as these amendments had been declared to be unconstitutional and void. Rhyne v. Lipscombe, supra.
If it was desirous to make these changes they were the proper subjects of amendment. (693)
It is claimed that the Court should look for the object to be attained by the enactment — what was the wrong and what was the intended benefit to be effected by the legislation. But when we apply this rule, and look for the evil under the act of 1895, and the benefit to be accomplished under the act of 1899, we find none, as the Court under the act of 1895 and under the act of 1899 is precisely the same, except as to the personnel of the clerk. The plaintiff is out and the defendant is in. We can find no reason for this change, unless we were to enter a field of inquiry that we, as a coordinate department of the government, have no right to enter, and which we have no more disposition to enter than we have the right to do so. That field of inquiry to us is a "sealed book."
So, finding that according to the precedents, judicial interpretation, the fact that the act says that it is "abolished" does not make it so, if the act itself shows that it is not, we proceed with our investigation. And in doing so, we find the act of 3 March, referring to and recognizing the criminal courts established by the act of 1895, the act that defendant *Page 440 
claims to have been "abolished" by the act of 27 February, which provides in section 22, as follows: "That all criminal causes, indictments and proceedings by scire facias or otherwise against defendants or witnesses and their sureties, now pending in the circuit courts of the counties of Buncombe, Madison, Haywood, Henderson, McDowell or the Superior Courts of any of the counties composing said Western Criminal Court, shall be and are hereby transferred and removed to the Western Criminal District Court created by this act."
(694) Thus it is seen that this act recognizes the existence of the criminal courts established by the act of 1895, by providing that all the cases now pending in said courts shall be, and are "hereby"
transferred, that is by the act of 3 March, 1899, to the courts created by that act.
This court being purely a creature of legislation has no function or powers except those given it by the Legislature. It has no clerk except as given it by legislation. It has no judge or other officer except as given it by legislation. Its officers have no fees except as prescribed and fixed by legislation. None of its officers, witnesses or jurors, except the judge and solicitor, have their fees and compensations fixed by the act of 1899, without referring to the act of 1895. The act of 1895 prescribed and fixed all these fees and compensation. The act of 3 March provides that they shall be the same as now fixed by law. The act of 1895 is the only law
fixing the fees of the officers of this court, and must be the law referred to in the act of 1899.
We are thus led to the conclusion that the acts of 1899 must be considered together, and are in pari materia with the act of 1895 and act of 1897, creating a criminal court in McDowell County, and putting it in the criminal circuit with Buncombe and other counties. Thus considered, they are but amendments to the act of 1895 and the act of 1897, and do not abolish the criminal court of Buncombe County. And this being so, the relator, Wilson, is entitled to his office under the doctrine ofHoke v. Henderson, 15 N.C. 1; Wood v. Bellamy and State Prison v.Day, supra, and every other case decided by this Court since Hoke v.Henderson where the question has been involved. This case has been the pride of the bench and of the bar of this State for more than 60 years; and whatever others may say, we find it to be the settled law of this State, based as we believe, upon just principles and sound reasoning.
(695) We have recently heard the argument advanced that a public officer has no interest in the office, but only in the salary and fees of the office. This is new doctrine to us. The salary and fees are but incidents of the office, and if one has no office he has no interest in the fees. Take the office from its owner, and you take from him the fees. Hokev. Henderson recognizes this right, this property in an officer, and *Page 441 
protects it as the property of the owner. But we do not feel called upon at this late day to defend Hoke v. Henderson. It has been defended by every decision of this Court from 1883 to the present time.
From the intimations made by a member of this Court we are induced to say: That we have discussed the legal questions arising in this case as they appeared to us; we do not invite criticism, we have no right to object to fair criticism, and we do not do so. If such criticism shall be indulged in, as is not just or legitimate, we believe that an intelligent and learned profession will discriminate between that which is legitimate and that which is not.
It has been suggested by a member of this Court, that the Legislature has the power to impeach a judge — that it has recently done so, and that there is no appeal from its judgment. Such a suggestion as this, has never occurred in the history of this Court until now. This suggestion added nothing to the strength of the argument advanced for the defendant. Why it should have been made, we do not know. But remembering our position as members of this Court, we will not express our sentiments as to such suggestions, and will only say that, in our opinion, any member of any court, who would allow himself to be influenced by such suggestions is unfit to be a judge.
There is error and the demurrer should have been overruled. (696) The plaintiff is entitled to the relief he demands.
REVERSED.