B. F. KEITH ET AL. v. N. H. LOCKHART ET AL., COMMISSIONERS OF PENDER COUNTY.

(Filed 26 April, 1916.)

1. Stock Law—Counties—Fences—Necessary Expense—Constitutional Law.

The building of a county fence by a county having the free-range law, between it and an adjoining county having the stock law, is not a necessary expense within the meaning of Art. VII, sec. 7, of the Constitution, prohibiting counties, towns, etc., from "contracting debts, etc., and levying taxes except for its necessary expenses," etc.

2. Statutes—Pari Materia—Stock Law.

Statutes passed at the same session of the Legislature, or one at a later session thereof, upon the same subject-matter, being in pari materia, should be construed together as the same law; and where by special enactment a county is authorized to submit to the voters thereof the proposition of continuing the stock law in effect, and by a later statute makes provision for the building of a county-line fence between it and an adjoining county having the stock law in effect, and the later

act expressly refers to the former one and provides for the levy of a special tax for the purpose, it is *Held,* that the two acts are *in pari materia,* and should be construed together as a whole.

**3. Elections — Related Propositions — One Ballot — Statutes — Stock Law — Elections.**

Where a legislative enactment authorizes a county to submit to its voters the question of continuing the stock law therein, except as to certain stated and defined portions, and should its discontinuance be voted favorably upon the county should maintain a line fence between it and adjoining counties having the no-fence law, and levy a special tax for the purpose, it is *Held,* that the several propositions are so related as to authorize the Legislature to have them submitted upon the single ballot of "for" or "against" the stock law; and those voting against the stock law will be considered as voting in favor of building and maintaining the fence and issuing a special tax for that purpose.

**4. Taxation—Stock Law—Reserved Localities—Constitutional Law.**

Where under legislative authority a county submits to its voters the question, by ballot, of continuing the stock law therein, reserving certain defined localities, and in event the question of its continuance should be negatived the county should maintain a line fence between it and an adjoining county having the stock law, and levy a special tax for that purpose, but with the proviso that the tax shall not be levied on the property of natural persons in the localities reserved: *Held,* the proviso violates the mandate of our Constitution, Art. VII, sec. 9, "That all taxes levied by any county, etc., shall be uniform and *ad valorem* upon all property except property exempt by the Constitution."

**5. Constitutional Law—Statutes—Invalid in Part—Taxation—Stock Law— Counties.**

Where under authority of the statute a county has voted to discontinue the stock law, and to maintain, by special taxation, a line fence between it and a county having the stock law, but with provision that the property in the reserved territory should not be taxed for the maintenance of the county fence, the courts may not decree the proviso invalid, and make effective the levy of the special tax, for such would impose the tax upon the property in the reserved locality, contrary to the intent of the statute; and to divide the county into two districts, stock-law and free-range territory, would impose a tax upon localities contrary to the intent of the statute; and the statute, so far as it provides for the special tax, will be declared unconstitutional. Constitution, Art. VII, sec. 9.

**6. Same—Several Parts—Vote of the People.**

Where a county, under legislative authority, has voted to repeal an existing stock law and establish a free-range territory, but upon condition that a fence be maintained between it and an adjoining county having a stock law, to be provided for by an unconstitutional special tax (Constitution, Art. VII, sec. 7), or from its public general funds, and it appears that the moneys in its treasury were for other special purposes, and that the general tax for county revenue had already been

levied to the constitutional limit, it is *Held*, the valid portions of the law are distinct and severable from the invalid portions, and the vote to establish the free-range policy will be declared valid, and to be put into effect whenever by appropriate and valid legislation the means are provided for building the fence, requiring another vote of the people if they are to be raised by a special tax.

ALLEN, J., dissenting.

CIVIL ACTION, heard on return to preliminary restraining order before *Stacey, J.,* at March Term, 1916, of PENDER.

The action was instituted by plaintiffs, citizens and taxpayers of said county, to restrain the board of commissioners from borrowing money to build a public fence around certain portions of Pender County abutting upon other counties, where the stock or no-fence law prevailed.

On the hearing it was, among other things, properly made to appear that prior to 1915 the no-fence law prevailed in the county of Pender by legislative enactment, and in said year the Legislature passed two statutes designed and intended to submit the question of its continuance to the voters of the county, excepting from the operations of these statutes certain specified sections of the county, to wit, those townships and localities where the stock law had been established prior to 1912, such localities including Rocky Point Township and a taxing district of 2 miles square at or near the center of the county, including Burgaw, the county site, and perhaps one other. The statutes referred to, being chapters 116 and 505 of Public-Local Laws, 1915, are as follows:

"That it shall be the duty of the board of county commissioners of Pender County to call an election and submit questions of stock law to the qualified voters of Pender County on Tuesday after the first Monday in November, 1915, and if at such election a majority of the votes cast be in favor of stock law, then the provisions of chapter 35, Revisal 1905 of North Carolina, relating to the stock law, shall be in force over the whole of Pender County from and after the first day of March, 1916; but if at such election a majority of the votes cast shall be against stock law, then the provisions of section 1660 of chapter 35 of the Revisal of 1905, and other sections in said chapter, relating to the fence law, shall be in full force and effect in said county from and after 1 March, 1916: *Provided further,* that this act shall not apply to any district or territory in said county under the stock law prior to 1 January, 1912: *Provided further,* that if a majority of the votes cast in said election be against stock law, then in that event, and before the provisions of this act shall become operative, the board of county commissioners of Pender County shall, at the expense of said county, erect and maintain a sufficient and substantial fence along the county line of said county where stock law in the counties adjoining obtains."

And chapter 505: "That in the event a majority of the votes cast at the election to be held in November, 1915, on the question of 'stock law' or 'no stock law' be against stock law, then the commissioners of Pender County are authorized and directed to levy a special tax on all taxable property, not exceeding 25 cents on the $100 valuation of property and a tax not more than 75 cents on each poll, for the purpose of erecting a sufficient fence between Pender and all stock-law counties: *Provided,* that the provisions of this act shall not apply to the real or personal property of any natural person within the boundary of the stock-law district of Rocky Point. That the county commissioners of Pender County be further empowered and directed to use any surplus funds, now or which may hereafter be in the treasury, for the purpose of building the said fence, the same to be replaced out of the funds raised for the special tax provided for in this act."

In further connection with his rulings, his Honor found relevant facts as follows:

"That an election was duly held as provided by chapter 116, Public-Local Laws 1915, and a majority of the qualified voters of Pender County voted at said election 'against stock law.'

"That at the present time there are no surplus funds in the hands of the sheriff and treasurer of Pender County available for the purpose of building a fence as so authorized to be used by chapter 505, Public-Local Laws 1915.

"That the commissioners of Pender County have levied no tax as provided by chapter 505, Public-Local Laws 1915, and that they have already made levies for general State and county purposes up to the constitutional limit of 66⅔ cents on the $100 valuation of property and $2 on each poll.

"That prior to 1 January, 1912, there was a stock-law district in Rocky Point Township, which borders on the line of New Hanover County, where stock law obtains, and a stock-law district in Burgaw Township in said county, and that the fences around said district have been allowed to go down, and that at the present time stock law is in force over all of Pender County."

And being of opinion, first, that the building of the fence was a condition precedent to the operation of the acts; second, that same could not be regarded as a necessary county expense; third, that the two acts were *in pari materia* and, under the same, the election held and carried "against stock law" was tantamount to a vote authorizing the special tax contemplated in chapter 505, *supra,* he entered judgment as follows:

"It is now, therefore, considered, adjudged and decreed by the court, that chapter 505, Public-Local Laws 1915, is valid and constitutional,

except that portion of said chapter which contains the proviso as follows: 'Provided, that the provisions of this act shall not apply to the real or personal property of any natural person within the boundary of the stock-law district of Rocky Point Township,' which is hereby declared unconstitutional and void, and is stricken from said act.

"It is further ordered and adjudged that the commissioners of Pender County have no authority to pledge the faith and credit of the county for the purpose of building said fence, and that the said commissioners be and they are hereby restrained and enjoined from borrowing money or pledging the faith and credit of the county for the purpose of building the fence provided for under chapter 116, Public-Local Laws 1915, until sufficient available surplus funds shall come into the hands of the treasurer of Pender County, or until the taxes authorized by chapter 505, Public-Local Laws 1915, can be levied and collected.

"It is further ordered that the plaintiffs recover of the defendants their costs in this action incurred, to be taxed by the clerk of this court."

Thereupon plaintiffs except and appeal, assigning error in terms as follows:

"The plaintiffs except to so much of the foregoing judgment as declares and holds that chapters 116 and 505, Public-Local Laws 1915, are companion acts *in pari materia,* and that the election held under chapter 116 is tantamount and equivalent to a ratification of chapter 505, and to so much of said judgment as declares and holds that chapter 505, Public-Local Laws 1915, is valid and constitutional."

And defendants except and assign errors as follows:

"The defendants except to so much of said judgment and findings of fact as hold that the building of said fence is a condition precedent to the said act becoming operative; and also except to the finding of fact that there is no surplus fund in Pender County as contemplated in said act; and also except to so much of said judgment as holds that the commissioners of Pender County have no authority to pledge the faith and credit of the county for the purpose of building said fence; and the defendants also except to so much of said judgment as restrains them from borrowing money or pledging the faith and credit of the county to build said fence, and to so much of said judgment as taxes them with the costs."

*C. D. Weeks and C. E. McCullen for plaintiff.*
*Duffy & Day, John D. Kerr, A. G. Ricaud, H. L. Stevens, J. J. Best, and J. H. Burnett for defendant.*

HOKE, J., after stating the case: The Court is of opinion that his Honor correctly ruled that a county fence of the kind involved in the

appeal is not a "necessary expense" within the meaning of Article VII,
sec. 7, of the Constitution, prohibiting counties, towns, etc., from con-
tracting debts, etc., and levying taxes "except for its necessary ex-
penses." While this term may not be given a fixed or arbitrary mean-
ing, *Fawcett v. Mount Airy,* 134 N. C., 125, it more especially refers to
the ordinary and usual expenditures reasonably required to enable a
county to properly perform its duties as part of the State Govern-
ment. Speaking to the subject in *Jones v. Comrs.,* 137 N. C., pp.
579-599, the Court said: "The term may be said to involve and in-
clude the support of the aged and infirm, the laying out and repair of
public highways, the construction of bridges, the maintenance of pub-
lic peace and the administration of public justice, expenses to enable
the county to carry on the work for which it was organized and given a
portion of the State's sovereignty." This being its general meaning,
the term, "necessary expense," should not be extended to include an
indebtedness for a line fence around a part of a county which may, at
times, require an extended outlay and which may or may not be de-
sirable in more especial reference to the interest of private ownership
in particular localities.

We concur, also, in his Honor's view, that the two statutes, chap-
ters 116 and 505, Public-Local Laws 1915, passed at the same session
and being *in pari materia,* should be construed together as one and the
same law. This is not only true as a general principle of statutory
construction applicable to statutes referring to the same subject, and
usually whether passed at the same session or not, *Cecil v. High Point,*
165 N. C., 431; *Greene v. Owen,* 125 N. C., 219, and *Wilson v. Jordan,*
124 N. C., 683; but the later statute, chapter 505, in express terms, refers
to and makes itself a part of the former.

Considering, then, the principal features of this legislation as a
whole, and dependent on approval of a popular vote, a method estab-
lished and allowed in matters relating to municipal corporations, Cooley
on Court Limitations, p. 138, we have the statute providing:

1. That no stock or free-range law shall prevail in Pender County
except as to those portions of the county where the stock law prevailed
prior to 1 January, 1912.

2. That the act should not become operative till a county-line fence
should be constructed in those parts of the county line adjacent to stock-
law territory in other counties.

3. That the commissioners, on a majority vote for "no-stock law,"
could levy a special tax to maintain the fence with certain restrictive
limitations.

And we see no reason why, as designed by this last section, if it had
been otherwise valid, a majority vote for "no-stock law" should not be

construed and considered as an adequate and sufficient expression of approval by the voters, authorizing the commissioners to lay a tax for the specific purpose. We have held that the combining of two related propositions and taking the sense of the voters thereon by a single ballot is, as a general rule, a question for legislative determination, *Winston v. Bank,* 158 N. C., 512; *Briggs v. Raleigh,* 166 N. C., 149; and there is nothing here to show that there has been an improper exercise of the power. Doubtless, if two unrelated propositions were submitted on a single ballot, and in such a manner that the one was so clearly burdensome and coercive as to amount to a. suppression of the voters' will upon the other, the proposition might become one for judicial scrutiny and control; but in the present instance the two questions are directly related, and the proper and special tax for the county-line fence is an undertaking desirable not only to protect the stock-law territory of adjacent counties, but to restrain the stock of free-range territory in Pender County from straying across the county line, where they are liable to be impounded.

While the voters, therefore, may be held to have approved the measure, the statute, to which he has assented, in the feature providing for a tax levy cannot be enforced by reason of the proviso therein that the tax shall not be levied on the property of *natural* persons in Rocky Point Township, thus clearly violating our constitutional provision, Article VII, sec. 9: "That all taxes levied by any county, city, town, or township shall be uniform and *ad valorem* upon all property in the same, except property exempt by the Constitution."

Speaking to this question in *Kyle v. Mayor, etc., of Fayetteville,* 75 N. C., at page 447, *Bynum, J.,* said: "It is the provision and purpose of the Constitution that thereafter there should be no discrimination in taxation in favor of any class, person, or interest, but that everything, real or personal, possessing value as property and the subject of ownership, shall be taxed equally and by uniform rule," a statement fully approved in *Puitt v. Comrs.,* 94 N. C., 709, and many other cases. "A law, therefore, cannot exempt the property of individuals of a county, township, etc., while imposing a tax on property of same kind belonging to corporations." And the statute authorizing such a tax cannot be enforced. It is insisted for defendant that only the proviso being unconstitutional, this can be eliminated and the statute authorizing a special tax upheld. It is the recognized principle that "Where a part of the statute is unconstitutional, but the remainder is valid, the parts will be separated, if possible, and that which is constitutional will be sustained."

In Black on Constitutional Law the rule is said to be: "That if the invalid portions can be separated from the rest, and if, after their ex-

cision, there remains a complete, intelligible, and valid statute capable of being executed, and conforming to the general purpose and intent of the Legislature as shown in the act, the same will not be adjudged unconstitutional *in toto,* but sustained to that extent."

The position, however, is not allowed to prevail when the parts of the statute are so connected and dependent the one upon the other that to eliminate one will work substantial change to the portion which remains. Thus, in Black's work, the author further says, page 63: "And if the unconstitutional clause cannot be rejected without causing the statute to enact what the Legislature did not intend, the whole statute must fall.

Speaking to the same subject in the first of the *Employers' Liability Cases,* 207 U. S., pp. 463-501, the present *Chief Justice White* said: "Equally clear is it, generally speaking, that when a statute contains provisions which are constitutional and others which are not, effect must be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable and not dependent one upon the other, and does not support the contention that what is indivisible may be divided. Moreover, even in a case where legal provisions may be severed in order to save, the rule applies only when it is plain that the Legislature would have enacted the legislation with the unconstitutional provisions eliminated." Citing *Illinois Central R. R. v. McKenonill,* 203 U. S., 514.

The doctrine so stated has been applied in this State in numerous cases, *Greene v. Owen,* 125 N. C., 212; *Riggsbee v. Durham,* 94 N. C., 800, and is not infrequently extended to provisos which are unconstitutional; but, recurring to the principle and the limitations upon it, the position can never include a case such as this, where "to strike out the offending proviso would result in enlarging the effect and operation of the body of the law." This position is very well stated in 1 Lewis Sutherland Statutory Construction (2 Ed.), sec. 306, as follows:

"If by striking out a void exception, proviso, or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part." To strike out the proviso here would be to subject the property of the individual owners of property in Rocky Point Township to the tax, and thus would be to read into the body of the law what the Legislature had not put there and what they did not intend.

It is suggested that all taxation on property in Rocky Point Township might be eliminated as unconstitutional, on the ground that the effect of the legislation we are considering is to divide Pender County

into two districts, the stock law and free-range territory, and to tax
Rocky Point, which had to build and maintain its own fence, in order
to construct a fence for the protection of the no-range territory, would
be a violation of right, in that it taxed one district for the exclusive
benefit of another.  This, too, is a recognized principle, that, under
ordinary conditions, the property of one district may not be taxed when
it clearly appears that such tax is for the exclusive benefit of another.
*Burrett v. Mayor,* 12 Cal., 76; *Wells v. City of Weston,* 22 Mo., 384;
*Hutchinson v. Land Co.,* 57 Ark., 554.  But to withdraw the property
of Rocky Point Township from the effect of the act on any such prin-
ciple would require the application of a like rule as to the Burgaw tax-
ing district, which the Legislature clearly intended to be taxed, and
would thus substantially alter the law as expressed and intended by the
lawmaking power, and which the voters had approved.  While we must
hold that the unconstitutional proviso necessarily has the effect of de-
stroying the entire portion of the statute relevant to the special tax, in-
cluding the *express* legislative authority to apply any surplus money
in the county treasury to building the fence, *Harper v. Comrs.,* 133
N. C., 106, it does not follow that the entire vote on the free-range policy
is to be ignored.

The statute as an entirety contains, as stated, the three propositions:

1. That on approval of the popular vote, free-range law shall pre-
vail in all that portion of Pender where the stock law did not exist prior
to January, 1912.

2. That the act should not go into effect till the county-line fence
was built.

3. That a special tax should be laid to raise money for the fence, etc.

And under the principle, heretofore stated, that the valid portions of
the law shall be sustained which are distinct and severable, we think the
vote as to the establishment of the free-range policy should be upheld, to
be put in effect whenever by appropriate and valid legislation the means
are provided for building the fence, *Moran v. Comrs.,* 168 N. C., 289;
requiring another vote of the people, however, if the means are to be
raised by a special tax.

It may be that the building of the fence, having been sanctioned by
the Legislature, has so far become a valid county charge that if at any
time there are surplus funds in the county treasury arising from gen-
eral taxation, and not required for current expenses of the county, the
commissioners would have the power to build the fence from such
funds, *Comrs. v. McDonald,* 148 N. C., 125; *Jackson v. Comrs., ante,*
379; but no such question is presented here, the facts showing that the
only moneys now in the treasury are those arising from taxation for
special purposes and which may not be lawfully used for any other,

*R. R. v. Comrs.,* 148 N. C., 221; and the general tax for county revenue has already been levied to the constitutional limit, and no funds, therefore, are presently available for the purposes of the fence.

Having held that the fence in question is not a necessary county expense, and that the special tax provided to build it may not be levied because its provisions are in violation of Article VII, sec. 7, of the Constitution, prohibiting municipalities from contracting debts, etc., or levying taxes except for necessary expenses unless approved by popular vote, the judgment below restraining the borrowing of money for the contemplated purpose is so far modified as to strike therefrom the words "until the taxes authorized by chapter 505, Public-Local Laws 1915, can be levied and collected," and, so modified, same is affirmed, the result being that

On appeal of plaintiff, judgment modified and affirmed.

On appeal of defendant, judgment affirmed.

ALLEN, J., dissenting: I understand the following principles to be recognized and approved in the opinion of the Court, to which I agree:

1. That the building of a fence for the purpose of carrying into effect the statutes referred to in the opinion is not a necessary expense.

2. That under the legislative acts it is necessary that a fence be built before the free range is operative in Pender County.

3. That a vote for free range necessarily included a vote for the tax prescribed in the statute.

4. That the proviso in the statute relating to Rocky Point stock-law district is unconstitutional and void.

5. That the effect of voting for the free range was to divide the county into two districts, in one of which were the stock-law territories in existence prior to 1912, and that the other was the free-range district.

6. That the property in the districts left under the stock law after the vote cannot be taxed for the purpose of building the fence around the free-range district, because this would destroy the principle of uniformity:

7. That a part of a statute may be constitutional and a part unconstitutional, and that the constitutional part may be enforced.

I dissent from that part of the opinion holding that the tax provided for by the statute cannot be levied on the property in the free-range district for the purpose of building the fence around the free-range district without another vote of the people.

The question has already been submitted to the people and they have already voted for free range and for the tax; and striking from the tax

list the property left in the stock-law district does not increase the taxes upon those left in the free-range district, because the rate of taxation for which they have voted is prescribed in the act.

If the principle is recognized that the property in the stock-law district cannot be taxed for the purpose of building the fence, and the question was again submitted to the people, they would be called upon to vote on the same proposition which they have already determined.

In other words, the people in the free-range part of the county have voted for free range and that a fence shall be built and for a specific tax, and if it is held that the tax cannot be collected in the territory left under the stock law and can be collected in the district for which free range has been voted, the voters in the free-range district get what they voted for, and they are not subjected to the payment of any more taxes than they would have to pay if those in the stock-law territory also paid the tax.