CITY OF WINSTON v. WACHOVIA BANK AND TRUST COMPANY.

(Filed 10 April, 1912.)

1. **Taxation—Bond Issues—Vote of the People—Unrelated Propositions—Single Ballot.**

When a popular vote is required to authorize or validate a municipal indebtedness the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded opportunity to express his preference or decision on a single ballot, and on the question as an entirety, the election as a rule is invalid and, on objection made, in apt time and in a proper way, may be disregarded and set aside.

2. **Same—Constitutional Law—Legislative Control.**

The general rule that a proposition to authorize or validate a municipal indebtedness should be single, not embodying two or more distinct and unrelated propositions, is not, in North Carolina, regulated by our Constitution, and the method of voting on a proposition of municipal indebtedness, under all ordinary conditions, is for the Legislature.

3. **Same—Interpretation of Statutes.**

Where a popular vote is required to authorize a municipal indebtedness, the voter should be afforded an opportunity to cast his ballot for a single proposition, and an act of the Legislature will not be construed as authorizing an election in contravention of this principle unless such purpose is expressed in clear and unmistakable terms.

**4. Same—Ordinance.**

　　Among other things, the Legislature provides that the city of Winston, for the issuance of bonds for several unrelated classes of municipal indebtedness, shall first pass "an ordinance specifying the purpose of the debt and the amount thereof," with the general provision, "with such regulations and rules governing such voting as the board of aldermen may prescribe": *Held*, the statutory provision first mentioned did not authorize the submission by the board of aldermen of the various distinct and unrelated propositions to the voters in a single ballot, and that this position was not affected by the general statutory provision, for that was only intended to refer to the time and place of voting, and other mere formal regulations concerning the election.

APPEAL from *Daniels, J.,* at February Term, 1912, of FOR-SYTH.

Civil action heard on demurrer to the complaint. The action was to collect the purchase price, which defendant had agreed to pay for certain municipal bonds of the city of Winston, to the amount of $160,000, which defendants had contracted to take at par and interest. The bonds having been tendered and all the facts relevant to their validity and issuance having been fully stated in the complaint, defendant demurred, assigning for cause that the bonds tendered were not binding on the city for the reason that, in submitting the question to the popular vote, several distinct and unrelated propositions were combined and voted for on a single ballot. There was judgment overruling the demurrer, and defendant excepted and appealed.

　　*Manly, Hendren & Womble for plaintiff.*
　　*Watson, Buxton & Watson for defendant.*

HOKE, J., after stating the case: The charter of the city of Winston, chapter 72, sec. 46, Private Laws 1909, conferred upon its government, on approval of the popular vote, the power to incur indebtedness and to issue bonds therefor, in terms as follows:

"That for the purpose of improving streets and sidewalks, purchasing, establishing, equipping, extending, or maintaining waterworks, sewerage, gas plant, electric light or power plant, public schools, or for any public improvement, or to fund or

pay any bonded debt now existing, on or before the date when same shall fall due, the board of aldermen is hereby authorized and empowered to create a public debt and issue bonds therefor, under the following provisions:. That an ordinance specifying the purpose of the debt, the amount thereof, the time when same shall fall due, and such other provisions the board may adopt, shall be passed by a three-fourths vote of the entire board at .two separate regular meetings, submitting the question of creating a debt to the vote of the people, with such regulations and rules governing such voting as the board of aldermen may prescribe, and the said debt shall become a valid obligation, and bonds may be issued in accordance with the ordinance if the same is approved by the vote of a majority of the qualified registered voters having voted in favor thereof; that the board may order a new registration whenever such question is submitted to the voters. . . ." By an amendment in 1911, the words "hospital or hospitals" were added, as one of the purposes to be inserted in the original act, just after the words "public schools."

Undertaking to exercise the power thus conferred, the board of aldermen, by the required majority and at two separate regular meetings, passed an ordinance providing: "That an election be held in the three wards of the city of Winston, on Tuesday, the 8th day of August, 1911, at which said election the qualified registered voters of the said city of Winston shall be allowed to vote upon the question of creating an indebtedness of $350,000; of which sum the amount of $75,000 shall be for permanent improvements to streets and sidewalks; the amount of $85,000 shall be for increasing the sewerage facilities; the amount of $40,000 shall be for the extension of water mains and improvements in the waterworks system; and the amount of $60,000 shall be for the erection and equipment of additional public school buildings; and the amount of $90,000 for improved and larger hospital facilities in the city of Winston and the acquisition, by purchase or otherwise, of a site and the erection and equipment of a hospital; and it is further ordained, that the mayor and board of aldermen be authorized to prepare, issue, and sell bonds to the amount of $350,000 as aforesaid; the proceeds to be used for the purposes and in the amounts herein

named. . . . The said bonds shall be sold and delivered as the necessities of the work and improvements and payments authorized may require." The ordinance then made certain regulations as to the time, place, and methods of conducting the election, the giving of proper notice, etc., and concluded as follows: "The secretary and treasurer of the city shall provide and furnish the necessary ballots for each ward, and these ballots shall be of the uniform size and color, to be selected by the secretary and treasurer; and those who vote at the election, if in favor of the issuance of said bonds and the creating of the indebtedness, shall vote a ticket with the word 'Approved' written or printed thereon; and those opposed to the proposition shall vote a ticket with the words 'Not Approved' written or printed thereon."

That pursuant to the ordinance and its requirements, an election was held and the proposition to incur the indebtedness for the different purposes specified was approved by the voters with practical unanimity, there being only ten votes cast against the measure. The ballot used was single, with the words "Approved" or "Not Approved" printed thereon, and was taken on the proposition as an entirety, as directed by the ordinance; that under authority vested in them by these different proceedings, the board of aldermen, by resolution duly passed at a meeting in September, 1911, determined on issuing bonds to the amount of $160,000, the proceeds to be used for "the following purposes and none other, to wit: $60,000 for the erection and equipment of additional school buildings; $20,000 for the extension of water mains and improvements in the waterworks system; $42,500 for increasing the sewerage facilities; $37,500 for permanent improvements to streets and sidewalks; all making a total of $160,000 par value of bonds"; and, having bargained said bonds at par to defendant and tendered the same, payment was refused, defendant contending that the bonds are invalid.

On these, the controlling facts relevant to the inquiry, the Court is of opinion that the position of defendant is well taken and that the proposed bond issue is without warrant of law. It has come to be well understood, certainly it is sustained by the great weight of authority, that when a popular vote is required

to authorize or validate a municipal indebtedness the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded opportunity to express his preference or decision on a single ballot, and on the question as an entirety, the election as a rule is invalid, and, on objection made, in apt time and in a proper way, may be disregarded and set aside. This was recognized by this Court in *Goforth v. Construction Co.,* 96 N. C., 538, a suit to set aside an election and prevent a bond issue pursuant to same, and in which *Merrimon, J.,* delivering the opinion, said: "We do not deem it necessary at this time to decide what effect the taking of the vote upon the propositions to subscribe for stock of two distinct companies as a single proposition may have on the election, except to say that it was certainly irregular and improper to do so." And there are numerous decisions in the courts of other States in which such an election is directly held to be invalid. *Ross v. Lipscomb,* 83 S. C., 156; *Johnston v. Roddy,* 83 S. C., 462; *Rea v. City of La-Fayette,* 130 Ga., 771; *City of Bethany v. Allen,* 186 Mo., 673; *Gas and Water Co. v. City Alyria,* 57 Ohio St., 374; *Williams v. People,* 132 Ill., 583; *Supervisors v. R. R.,* 21 Ill., pp. 338-373; *Lewis v. Commissioners,* 12 Kan., 186; *Leavenworth v. Wilson,* 69 Kan., 74; *McMillan v. Lee County,* 3 Iowa, 311; *Stern v. City Fargo* (North Dakota), 122 N. W., 403; *City of Denver v. Hayes,* 28 Col., 110; *Trust Co. v. Sioux Falls,* 131 Fed., 891; *McBryde v. Montesano,* 7 Wash., 69; and many others could be cited. The ruling and the reasons upon which it is generally made to rest are very well presented by *Stockton, J.,* delivering the opinion in *McMillan v. Lee County,* 3 Iowa, *supra,* as follows: "The law, in our opinion, has provided no such mode of submitting these questions to the vote of the people. The evils which might be permitted to grow up under such a system are so obvious and apparent that any extended discussion of the question by us would be superfluous. It may be sufficient to suggest that if it were allowed, measures in themselves odious and oppressive might by means of it become fastened upon a county, which in no other way could have obtained the number of votes requisite to insure their adoption but by

being connected with some other proposition, which commended itself to the favor and suffrages of the people by its inherent merits and popularity. They must be adopted or rejected together. After the same manner, a measure desirable and necessary to a people of a county may, when offered for their adoption, be rejected by their votes and fail to become a law by reason of its connection with some other measure or measures unpopular and uncalled for. In either case there is an evil. An unpopular measure may be forced upon an unwilling people, or a necessary and desirable one may be denied them, in spite of their wishes. It is sufficient for us to say that the law, in our opinion, intended to provide for no such system of contradictions. A measure wise and salutary in itself needs no adventitious assistance to recommend it to the suffrages of the people or to insure its adoption by them. It may demand that its enactment into a law shall be made to depend upon its sanction alone. A pernicious measure is not entitled to such assistance, and should be permitted to stand or fall by its own inherent merits or defects"; and by *Brewer, J., in Lewis v. Commissioners, supra:* "It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined and the real will of the people overslaughed. By this combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections, that aims to secure freedom of choice, not merely between parties, but also in respect to every office to be filled and every measure to be determined. A voter at a State election would be shocked to be told that because he voted for a person named for Governor on one

ticket he must vote for all other persons named thereon; or that, voting for one person, he was to be understood as voting for all. He would feel that his freedom of choice was infringed upon. None the less is it so by such a submission as this." And continuing further, he said: "A mode of submission which is so obviously unjust, so contrary to the spirit of election, and has received such condemnation from the courts, will not be imputed to the intention of the Legislature, unless necessarily demanded by the language used"; citations made with approval in the learned opinion of *Chief Justice Fish* in *Rea v. City of LaFayette, supra.*

A perusal of the authorities will disclose that in much the larger number of them the rule, as stated, is made dependent on the proper interpretation of the legislative statutes applicable to and controlling the question, and is not referred by them to any constitutional principle. True, the Georgia case, above cited, declares that "such an election contravenes the spirit of their Constitution," as embodied in the requirement that "No *law* or *ordinance* shall pass which refers to more than one subject-matter"; but so far as examined no decision rests the position on any express constitutional provision except the case from Colorado. *Denver v. Hayes, supra.* In that case their Constitution specified: "That no city or town shall contract any debt by loan in any form except by means of an ordinance, . . . specifying the purposes to which the funds to be raised shall be applied. . . . But no such debt shall be created unless the question of incurring the same, at a regular election, . . . shall be sanctioned by a majority of those voting on the question, by ballot deposited in a separate ballot box, etc., shall vote in favor of creating the debt, etc.," and the Court, construing the section and a statute which authorized the creation of a municipal debt for certain specified purposes, held that the correct interpretation of the Constitution and the statute was one and the same, and both required that, in order to a valid election the voter should not be required to vote for dual propositions on a single ballot.

But the Constitution of North Carolina, while it clearly requires the approval of a popular vote to sanction an indebted-

ness for any purpose other than for necessary expenses, Article VII, sec. 7, and contains direct admonition that the General Assembly shall safeguard municipalities so as to prevent abuses in the matter of taxation, assessment, and the incurring of debts, Article VIII, sec. 4, deals with the subject otherwise in very general terms, the exact language of the constitutional provisions referred to being as follows:

ARTICLE VII, SEC. 7.  *No debt or loan except a majority of voters.*  No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein.

ARTICLE VIII, SEC. 4.  *Legislature to provide for organizing cities, towns, etc.*  It shall be the duty of the Legislature to provide for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and in contracting debts by such municipal corporations.

In view of the very general terms in which these provisions are expressed and the undoubted position that, except where regulated by the Constitution, this question of election methods is, to a large extent, legislative in its character, we conclude that an election of the kind we are discussing does not, with us, offend against any constitutional principle, and, as to the methods of ascertaining the popular vote and the restrictions to be imposed upon municipalities, in respect to taxation, assessment, and the contracting of debts, the subject is left in a large measure to legislative discretion.  This view finds support in a concurring opinion of *Chief Justice Jones,* in one of the South Carolina cases cited, *Johnston v. Roddy,* in which he says: "I concur in the judgment.  When the statute confers upon the municipality the power to contract for waterworks and sewerage in an aggregate sum and to submit the question of bond issue therefor as a single proposition, I do not think the courts have a right to interfere because, in their view, such submission is unwise and dangerous.  If the municipal action is within stat-

utory power granted, and no constitutional inhibition appears, courts cannot annul"; and the latter portion of the citation from *Judge Brewer's* opinion, *supra,* "A mode of submission which is so obviously unjust, so contrary to the spirit of election, and has received such condemnation from the courts, will not be imputed to the intention of the Legislature, unless necessarily demanded by the language used," gives clear indication that the distinguished jurist regarded and was dealing with the subject as being within legislative control. Two. decisions of this Court are in general approval of this position; *Lumberton v. Nuveen Co.,* 144 N. C., 303, and *Smith v. Belhaven,* 150 N. C., 156, and while the question of voting in separate ballot boxes was chiefly urged upon our attention, an examination of the record and decision of the last case will disclose that the question of voting for dual propositions on a single ballot was also presented and such an election was upheld because the statute clearly provided that the vote should be taken in that way.

From these considerations and the authorities cited, we take it as established in this State:

1. That, in reference to the question we are discussing, the method of voting on a proposition of municipal indebtedness, under all ordinary conditions, is for the Legislature.

2. In view of the position so generally recognized, that where a popular vote is required the voter should be afforded opportunity to cast his ballot for a single proposition, an act of the Legislature will not be construed as authorizing an election in contravention of this principle unless such purpose is expressed in clear and unmistakable terms. Applying these principles to the cause in hand, we are of opinion, as stated, that this election must be declared invalid. While some of the decisions have perhaps gone too far in holding that several propositions shall be considered distinct and unrelated, here is an aggregate indebtedness of $350,000, embracing various propositions, some of them undoubtedly distinct and voted on by the single ballot, containing the words "Approved" or "Not Approved," as the case may be, and there is nothing in section 46 of the charter, as we construe it, which requires or permits that these differing questions should be voted for on a single ballot. While the various

purposes are enumerated in the section, the law provides that "An ordinance specifying the purpose of the debt and the amount thereof" shall be first passed—almost the very language made the basis of the decisions cited in which elections of the kind have been declared invalid, and the result is not changed or in any way affected by the general provision, "with such regulations and rules governing such voting as the board of aldermen may prescribe." This, in our opinion, refers, and was only intended to refer, to the time and place of voting and other merely formal regulations concerning the elections, and may not be construed as authorizing the board of aldermen to provide for and hold an election in direct contravention of the wise and wholesome principle that a voter should not be required to vote on single ballot for two or more distinct and entirely unrelated propositions. We are of opinion, and so hold, that the demurrer of defendant must be sustained, and this will be certified, that judgment to that effect be entered.

Reversed.