### H. L. HILL et al. v. LENOIR COUNTY et al.

(Filed 4 December, 1918.)

**1. Taxation — Ballots — Antagonistic Propositions — Schools—Townships— Statutes.**

Where statutory authority is given to a county to submit to its voters the question of levying a tax to supplement its county school funds, and provision is made that, upon a favorable vote, the tax shall be levied and collected in the same manner and at the same time as other taxes of the county are levied and collected, with further like provision as to the townships therein; and it is further provided that should the county vote against the tax, an election may be held at any time thereafter in any township that has failed to vote for the tax: *Held,* the provisions as to the county and township in relation to the tax, for the purpose authorized, are twofold and antagonistic, the one for the county tax and the other for the township tax, depriving the voter of his right to choose between the two propositions if submitted upon a single ballot; and where this has been done, and the county at large has voted against the proposition, it may not be declared as carried as to a township therein which has cast a majority of its votes in its favor at the same election and upon the single ballot.

**2. Same—Interpretation of Statutes.**

A legislative act which authorizes an election to be held upon the question of levying a tax to supplement its county school fund, providing that

if any of its townships should cast a majority of its votes in its favor it should apply only to the township, should the county as a whole reject the proposition, requiring but a single ballot upon the two propositions, is contrary to public policy and to our Constitution, Art. VII, sec. 7, and void.

**3. Constitutional Law—Taxation—Schools—Necessary Expense.**

The levying of a tax to supplement the school funds of a county or township is not for a necessary expense, and requires the submission of the question to the voters of the district. Constitution, Art. VII, sec. 7.

**4. Courts—Constitutional Law—Statutes—Taxation—Schools.**

An act of the Legislature will not be declared unconstitutional by the courts when its validity may be upheld by a reasonable interpretation of its terms; and chapter 71, Laws 1911, authorizing an election to be held by the County of Lenoir to determine upon a tax to supplement the school funds, and to apply to townships voting in its favor, should the proposition be rejected by the county at large, is construed to require the propositions to be submitted upon separate ballots, to ascertain the expression of the voters as to whether they desired it for the township if the county should vote against it, or *vice versa*.

**5. Elections—Notice—Ballots—Taxation—Schools—Counties—Townships.**

An election held under the provisions of chapter 71, Laws 1911, authorizing a township within a county to vote upon a tax to supplement its school funds, in the event the proposition were defeated in the county at large, wherein the notices of election only set forth the proposition as to the entire county, and merely referred to the statute, and was submitted upon a single ballot and defeated, only ascertained the will of the voters as to the entire county, and not of the voters of a township that had cast a majority vote in its favor, so that it would apply to that particular township alone.

**6. Constitutional Law — Taxation — Discrimination — Schools — Counties— Townships.**

A legislative act authorizing a township within a county to submit to its voters the question of imposing upon the township a tax to supplement its public school funds in the event the county should vote, as a county, against the proposition, the taxes to be levied and collected in the same manner and at the same time as other taxes of the county are levied and collected; and should the vote within the township be favorable, "the annual special local-tax levy, etc., may be reduced by an amount not exceeding the special levy under the act," etc. *Semble*, the effect of the statute would be to impose a tax upon one section in favor of another, which is prohibited by our Constitution, and to allow one section to impose a tax upon another to which it is not itself subjected, which is also prohibited.

BROWN and ALLEN, JJ., concurring, with opinion; CLARK, C. J., dissenting opinion.

ACTION, tried before *Daniels, J.*, 27 August, 1918, at chambers, upon a motion to continue an injunction.

On the first day of April, 1918, the Board of Education of Lenoir County presented its petition to the Board of Commissioners of that

county, asking the latter board "to order an election to be held in said county and to ascertain the will of the people, whether there shall be levied on all taxable property and polls of said county a special tax, the amount per year to be fixed by the Board of Education of Lenoir County, and such amount to be certified each year to the Board of Commissioners to be levied, not to exceed 30 cents on the $100 valuation of property and 90 cents on each poll to supplement the county school fund of said county."

Upon consideration of said petition, the Board of Commissioners of said county called an election in the following language: "It is now by the Board of County Commissioners ordered that an election be held in Lenoir County to ascertain the will of the people, whether there shall be levied on all taxable property and polls of said county a special tax, the amount of said levy upon property and polls to be fixed by the commissioners upon the request of the County Board of Education, the County Board of Education naming the said amount, not to exceed 30 cents on the $100 valuation on property and 90 cents on each poll, said amount to be derived therefrom to supplement the county school funds of said county."

A new registration was ordered, and notice of the election was given by posting the order, or the substance thereof, at the courthouse door and in each voting precinct in the county. No advertisement of either the election or the new registration required was published in any newspaper. Nothing was said about a township tax in either the petition or order for the election, but defendants contend that the fact that the petition stated that "This petition and request is made under and by virtue of chapter 71 of the Laws of 1911," and the statement in the order directing the election that "This order is made in compliance with chapter 71, Laws of 1911, and the said act is here referred to and its terms made a part hereof," was sufficient to constitute the election not only a vote for a county tax, but also upon a tax levy of similar amount in each township. But over against this contention is the statement in the petition and call that the purpose of the election was "To ascertain the will of the people, whether there shall be levied on all taxable property and polls of said county a special tax, . . . said amount to be derived therefrom to supplement the county school fund of said county."

The election was ordered. Notices are said to have been put up at the courthouse door and one notice in each township, but no publication was made in a newspaper, and the campaign proceeded in the usual manner.

The election was held on the 18th day of May, 1918, and notwithstanding the scant publicity given to the necessity of registration 1,728 persons registered, and thus qualified themselves to vote. Of this num-

ber 516 voted in favor of the tax, and although it was not necessary for those opposed to the tax to vote at all, having registered, 819 votes were cast against the tax. The majority of the registered vote against the tax was 1,209, and the majority of votes actually cast against the tax 303. Kinston Township voted for a tax to be used "to supplement the county school fund," and out of the 664 registered votes in that township 370 were cast in favor of the proposition to levy the tax upon all the property and polls of the county to supplement the school tax of the county, and of the registered vote in that township there was a small majority for the county tax. In nearly all of the other townships the proposition was heavily defeated, and in most of the townships the vote actually cast against the proposition greatly exceeded the vote cast in favor thereof, according to the tabulation of the vote contained in the record.

The votes were canvassed and the result declared and certified to the Board of Commissioners at the July meeting, and at this meeting that board declared that the proposition had been defeated as to the county, and that the tax and no part thereof should be levied upon the property of the county as a whole; but the board declared "that the special tax in Kinston Township was and is hereby declared to be carried," and it was proceeding, when restrained, to have levied and collected a tax in Kinston Township "in the same manner and at the same time as other taxes are levied and collected, the proceeds to be used to supplement the school fund of said township, as provided by law, not to exceed 30 cents on the $100 valuation, and not to exceed 90 cents on the poll in said township, the amount to be levied to be fixed each year by the County Board of Education and certified to this board and levied accordingly, as fully appears in the petition and order heretofore made by this board providing for said election under the requirements of the law."

The judge, at the hearing, refused to continue the injunction and dissolved the restraining order theretofore issued by *Judge Calvert,* and plaintiffs appealed.

*Y. T. Ormond, Murray Allen, and James H. Pou for plaintiffs.*
*Rouse & Rouse, Cowper, Whitaker & Hamme, and G. G. Moore for defendants.*

WALKER, J., after stating the case: The decision of the question presented to us by this record depends largely, if not altogether, upon the construction of the statute, it being chapter 71 of the Public Laws of 1911, and the validity of the election held thereunder. The act provides for an election in the county of Lenoir to ascertain the will of the people upon the question, whether taxes shall be levied "to supplement the

county school fund of said county," the same to be conducted under the same rules and regulations as prescribed for "district special school-tax elections" in section 4115 of the Revisal of 1905. It then further provides, in section 3, that if a majority of the qualified voters at the election thus held shall vote in favor of the tax, it shall be levied and collected in the same manner and at the same time as other taxes of the county are levied and collected. Similar provision is made in section 4, if a majority of the qualified voters of any township of the county shall vote for the special tax. In section 5 it is provided that "if a majority of the qualified voters at said election in any township or in the entire county shall vote for the tax, on petition, as therein set forth, the annual special local-tax levy of any special-tax district within the township or the county may be reduced by an amount not exceeding the special levy under the act for the county or township." And section 6 provides that where the county votes against the tax an election may be held at any time thereafter in any township that has failed to vote for the tax.

If the act of 1911, chapter 71, permitted the submission of the two-fold proposition, one for the county tax and one for the township tax, to be based upon a single ballot, such intention on the part of the Legislature is contrary to public policy and against the decisions of this Court.

In *Winston v. Bank,* 158 N. C., 512, it was said: "When a popular vote is required to authorize or validate a municipal indebtedness, the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded opportunity to express his preference or decision on a single ballot·and on the question as an entirety, the election, as a rule, is invalid, and on objection made in apt time and in a proper way may be disregarded and set aside."

The same was recognized in an earlier decision of the Court. *Goforth v. Construction Co.,* 96 N. C., 538, in which *Justice Merrimon* says: "We do not deem it necessary at this time to decide what effect the taking of the vote upon the proposition to subscribe for stock of two distinct companies as a single proposition may have on the election, except to say that it was certainly irregular and improper to do so."

This statement of the law controlling elections is fully supported by the text-writers and the decisions of other courts. In 21 A. & E. Ency. of Law (2d Ed.), at p. 47, the writer says: "Two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters might be thereby induced to vote for both propositions who would not have done so if the questions had been submitted singly."

Hill *v.* Lenoir Co.

In *Rea v. City of Lafayette,* 130 Ga., 771, the Supreme Court of Georgia holds that, "When several distinct and independent propositions for the issuing of bonds by a municipality are submitted to the qualified voters of a town or city, provision should be made for a separate vote upon each. They cannot lawfully be combined and submitted to the voters as a single question."

In the foregoing case the Georgia Court says: "No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves; or, in order to vote against the proposition which he desires to defeat, to vote also against the one which commends itself to the approval of his judgment. When he is thus compelled, if he votes at all, there is something closely akin to coercion when his ballot is cast."

The reasons upon which this principle is founded are stated by the Supreme Court of Iowa as follows: "The law, in our opinion, has provided no such mode of submitting these questions to the vote of the people. The evils which might be permitted to grow up under such system are so obvious and apparent that any extended discussion of the question by us would be superfluous. It may be sufficient to suggest that if it were allowed, measures in themselves odious and oppressive might by means of it become fastened upon a county which in no other way could have obtained the number of votes requisite to insure their adoption but by being connected with some other proposition which commended itself to the favor and suffrages of the people by its inherent merits and popularity. They must be adopted or rejected together. After the same manner, a measure desirable and necessary to a people of a county may, when offered for their adoption, be rejected by their votes and fail to become a law by reason of its connection with some other measure or measures unpopular and uncalled for. In either case there is an evil. An unpopular measure may be forced upon an unwilling people, or a necessary and desirable one may be denied them, in spite of their wishes. It is sufficient for us to say that the law, in our opinion, intended to provide for no such system of contradictions. A measure wise and salutary in itself needs no adventitious assistance to recommend it to the suffrages of the people or to insure its adoption by them. It may demand that its enactment into a law be made to depend upon its sanction alone. A pernicious measure is not entitled to such assistance, and should be permitted to stand or fall by its own inherent merits or defects." *McMillan v. Lee County,* 3 Iowa, 311, cited with approval in *Winston v. Bank, supra.*

Numerous decisions of the courts of other States holding invalid elections in which two separate propositions were submitted to a single vote of the people are collected and cited in the opinion of our Court

37—176

in *Winston v. Bank*, 158 N. C., at p. 516. Even if it should be conceded that two propositions can be submitted at a single election, if so directed by legislative enactment, certainly public policy would require that provision be made for casting a separate ballot on each proposition, unless otherwise directed by the Legislature, especially where the matter to be voted upon does not come within the class of necessary expenses. In no other way can the true will of the voters be determined and the purpose of the election be accomplished.

In *Lewis v. Comrs.*, 12 Kan., at p. 213, it is said: "It may be conceded that two or more questions may be submitted to a single election, provided each question may be voted on separately, so that each may stand on its merits. But that is a very different matter from tacking two questions together to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission."

It would be difficult to conceive a more glaring example of the harm resulting from the submission of two propositions to a single vote of the people than that arising under chapter 71, Laws of 1911. Voters desiring to supplement the county school fund by a special tax on the property of the entire county may be unwilling that the special tax should fall only on the property of the township in which they reside for the purpose of supplementing the school fund of said township, and, on the other hand, voters desiring the tax in their township may not desire that the levy be made county-wide. But under the act of 1911, every single voter who casts his vote in favor of the tax for the entire county, under the defendants' construction of the act, also votes for the tax for his township regardless of his attitude toward the question of levying the tax solely in the township in which he resides. The two propositions are so antagonistic that their submission at a single election and upon a single ballot is contrary to the Constitution, as we will show, to a sound public policy, and to the principle which should govern a fair election. If such double force could be given to a ballot, under the call for the election held 18th May, no such election actually was held. If it were the purpose of those who called that election to have a dual proposition, one for the county and one for the township, based upon a single ballot, it may well be doubted if sufficient legal notice of such purpose was given to the voters. In elections of this character great particularity should be required in the notice in order that the voters may be fully informed of the question they are called upon to decide. 15 Cyc., 325.

There is high authority for the principle that even where there is no direction as to the form in which the question shall be submitted to the voters, it is essential that it be stated in such manner as to enable them intelligently to express their opinion upon it, and for that purpose the

proposition should be submitted separate and distinct from any other proposition which is different from the question upon which a vote is desired or not germane to it.    2 Dillon on Municipal Corporations, sec. 891.

It will be noted upon a careful study of this statute that the real and single question submitted is, whether there shall be a county tax for the purpose therein specified, and there is no distinct and clear submission of the question whether there shall be a township tax.  If it means that if in voting for a county tax it should happen that a majority of the voters in a township have voted for it, then there shall be a tax in that township if the county tax is defeated.  This is obviously a denial of the right of the voter to cast a fair and untrammelled vote for the question of his choice, and the voters of the township by this declaration have not voted for a tax upon themselves, but, on the contrary, by voting so heavily in favor of the county tax, which, if carried, would have defeated the township tax, it is apparent that they intended to vote against a township tax, and yet the act declares, not logically, but constructively, if not arbitrarily, that they shall be considered as having voted for a township tax.  We are of the opinion that this clearly violates the spirit and the letter of the Constitution, art. 7, sec. 7.  That instrument provides in said section that no debt shall be contracted or tax levied for anything except necessary expenses unless previously authorized by a vote of a majority of the qualified voters in the county or township.  What does this mean?  The tax in question is not for necessary purposes or expenses, as we have held in *Hollowell v. Borden,* 148 N. C., 255, and *Smith v. School Trustees,* 141 N. C., 143, and therefore requires the sanction of a majority of the qualified voters before it can be levied.  The section means that where it is not a necessary expense, as here, each voter shall be consulted at the polls and shall have a free and fair opportunity to express his will upon the particular question, or it means nothing, and was a vain and idle promise to him. If he is required to vote for a tax which he favors, under the penalty that in doing so he may be subjected to another which he does not favor, but which he may stoutly oppose, he surely has not had the vote which the Constitution guarantees to him, for he has been embarrassed, if not coerced, in casting his vote, and was not, therefore, a free elector.

When the people of the township voted for the county tax it was substantially a vote against the township tax, as if the vote for county tax had prevailed in the county there would have been no township tax. And again, the people of the township here had no opportunity to vote for a township tax for the reason that no such question has been submitted to them.  The only proposition voted upon by them was that of a county tax, and they are now proposed to be taxed only in the town-

ship, and not in the county, because by mere construction they are held to have approved a township tax. The only just inference to be drawn from their vote is that they wanted the county tax and not the township tax.

This case is not like *Winston v. Bank,* 158 N. C., 512, for there the tax was for necessary expenses, such as street improvements, waterworks, sewerage, and other like purposes, and the Legislature had the right to require an election or not, at its discretion, and the same may be said with regard to *Lumberton v. Nuveen,* 144 N. C., 303; *Smith v. Belhaven,* 150 N. C., 156; *Briggs v. Raleigh,* 166 N. C., 149.

Commenting upon *Winston v. Bank, supra,* in *Taylor v. Greensboro,* 175 N. C., 423, 426, so recently decided, this Court thus distinguished it, and the passage quoted from it and approved in the *Taylor case* would seem to be decisively against the defendants upon the question now under consideration. The Court said in the *Taylor case,* where the validity of a dual question on a single ballot was raised: "The case of *Bank v. Winston,* 158 N. C., 512, presented a very different question from the one involved in this case. In that case it is held, 'When a popular vote is required to authorize or validate a municipal indebtedness the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded an opportunity to express his preference or decision on a single ballot and on the question as an entirety, the election, as a rule, is invalid, and on objection made in apt time and in a proper way may be disregarded and set aside.'"

The election in the *Winston case* being for the approval of a tax for necessary expenses, it was regulated by the Legislature, and not by the Constitution, while here as the proposed tax is for expenses, which we have held not to come within the class of necessaries, it is governed by the constitutional provision, which is mandatory, that there shall be an election at which, of course, the people shall be given a fair chance to vote on the particular measure. It would not be an election if such were not the case. They must not be compelled to vote for it, either directly or indirectly, and the Constitution most clearly implies that they shall not be unduly hampered in making their choice. The ballot in our case was solely for a county tax, and that is the only question submitted to a vote. The people have no chance to vote for a township tax as a separate and distinct proposal to impose that burden, not even the chance that a voter would have where there are two or more questions submitted on a single ballot, for there he who votes at all must necessarily vote on all the questions.

*Judge David J. Brewer,* for the Court, said in *Lewis v. Comrs.,* 12 Kan., 186: "It may be conceded that two or more questions may be

submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined and the real will of the people overslighted. By this combination an unpopular measure may be tacked on to one that is popular and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections that aims to secure freedom of choice not merely between parties, but also in respect to every office to be filled and every measure to be determined. A voter at a State election would be shocked to be told that because he voted for a person for governor named on one ticket he must vote for all other persons named thereon, or that voting for one person he was to be understood as voting for all. He would feel that his freedom of choice was infringed upon. None the less, it is so by such a submission as this." He also says: "A mode of submission which is so obviously unjust, so contrary to the spirit of election, and has received such condemnation from the courts, will not be imputed to be the intention of the Legislature unless necessarily demanded by the language used." Evidently in this passage he is referring to a proper construction of the statute and did not intend to concede that the Legislature had power to make such a submission if the language of the statute clearly permitted it. But this last clause has a direct and palpable bearing upon this case in one of its features.

We should not impute to the legislative act the intention to impair in the least the right of the people to have a free and distinct vote upon the question as to the township tax, and, therefore, the law of 1911 should be so construed within the rule stated by *Judge Brewer* as to require a ballot as to the county tax, and also one as to the township tax, for it is capable of such a construction. It will be observed upon reading the act that it provides, by sections 1, 2, and 3, for an election in the county for a county tax, and in section 4 that "in case a majority of the qualified voters at said election in any township shall vote for said special tax," etc. Surely it was not meant by these words that if the township voters shall vote for a county tax, it shall be considered as a vote for a township tax, or, in other words, if they have voted for one proposition they shall be considered as having voted for another and quite different and separate proposition upon which they had no chance to vote, and besides, the two were antagonistic in that if county tax carried there would be no township tax. The act itself treats them as separate and distinct questions, and provides, in substance, that a

vote for one—that is, the county tax—shall be taken as a vote against the other. The act should be so construed, under the principle heretofore stated, as requiring two ballots, one for the county tax and the other for the township tax, with a provision, which would be entirely constitutional, that a vote for the one, or county tax, shall annul or cancel the vote for the other. This would accord to the people their right under the Constitution to have a free vote and at the same time make adequate provision for a fair and constitutional election to raise the necessary taxes, and the very laudable purpose of aiding the public schools could just as easily be promoted or accomplished.

It has been settled by authority that proper implications may be made and reasonable inferences drawn for the purpose of sustaining an act of the Legislature (*Water Co. v. Water Co.,* 44 N. J. Eq., 427; *Lowery v. School Trustees,* 140 N. C., 33), and the act should be so construed, if possible, as to render it valid, rather than invalid. And it is also held that when a duty is imposed upon a public agency, the necessary implication arises that adequate power is given to do the thing in accordance with the Constitution and in the manner directed by that instrument. *Lowery v. School Trustees, supra.* It is, therefore, a proper deduction from these principles, that in this case we should so construe the act of 1911 as to conform it to the mandate of article 7, section 7, of the Constitution, by requiring both questions as to county and as to township tax to be submitted so that the people may have the chance, directly and actually, to vote upon each of those questions, and not be subjected to the imposition of a tax by construction of the vote, and when they have in fact voted for only one tax in the whole county, and by doing so have announced their clear intention to defeat the other tax. This method of voting is squarely against the constitutional requirement that there shall be a vote upon each and every proposition to tax the people—a free and unconstrained vote—a real vote, and not one by forced construction of the result.

It is said by the authorities that the question should be submitted in such manner as to enable the voters to intelligently express their opinion upon it, and for that purpose it should be submitted separate and distinct from any other proposition which is different from it or not germane to it. 15 Cyc., 325; 2 Dillon on Mun. Corp., sec. 891. The two propositions here must be distinct, under this principle, when a prevailing vote for one will destroy the other.

It was said in *O'Neill Eng. Co. v. Town of Ryan,* 124 Pac., 19: "To obtain the authority of the qualified voters to incur an indebtedness, or to enter into a contract otherwise prohibited, the proposition must be submitted to them in such specific language as to apprise the voters of

the full purpose and the exact and particular thing upon which they are called upon to vote and decide."

The framers of our Constitution were not concerned so much about the method or procedure of voting as that the right to the free exercise of the privilege of voting, where a vote was required, should be preserved unimpaired and safeguarded, but this they did provide for by the clearest implication, for the right to vote would be worthless without it.

The question of a township tax was not submitted, but the only one voted on was a county tax, and the voters are told that the more they voted and struggled to defeat a tax on the township by voting for the county tax the more they voted for that which they earnestly endeavored to defeat. This is somewhat of a paradox. In this respect, the case is dissimilar to any heretofore decided, as it presents quite a different question from those upon which the other decisions were rendered. If we should hold to be valid this method of voting for one thing and declaring the result to be in favor of another which does not follow logically from a decision of the first, and where the two questions are not so naturally related and linked together that the voter can be conclusively presumed to have voted on both, as in *Keith v. Lockhart,* 171 N. C., 451, we will otherwise have gone a long way toward allowing voters to be coerced in elections, and, too, it would be a very dangerous stride we are making toward an undesirable goal. The voter cannot be kept too free in the exercise of this important constitutional franchise. Even where the Legislature has the conceded power to act, as in the *Winston case,* where the expenses were necessary and the improvements local, it should be careful to see that the voter, who must pay the tax—perhaps a great burden to him in his poverty—is left perfectly free to vote as he will. We are satisfied that the Legislature meant in this instance to follow the salutary rule and to allow the people to vote separately upon the two propositions. We will add in regard to the *Winston case* that the Court only decided that the election did not conform to the statute under which it was held and the submission of the question on one ballot was not warranted by it.

There is another question in the case: the practicability of executing that part of the statute which relates to the disposition of the fund realized from the taxation. This is a very serious matter and worthy of our careful consideration. It is at least not clear to us how it can be done so as not to impose a tax upon one section in favor of another. We have held that this cannot be done. *Comrs. v. State Treasurer,* 174 N. C., 141. We need not pursue further the discussion of this question as our conclusion upon the other one is sufficient to dispose of the case.

We regard this as one of the most important questions which this

Court has been called upon to decide, involving, as it does, the right of the people to say by a distinct and unequivocal vote when they shall be taxed. The statute submitting the question should not be ambiguous, and the constitutional right of voting upon the measure should not be hampered or clogged in any way. We are not dealing with the construction of a legislative grant conferring the right to vote when the Constitution does not interfere and the Legislature itself prescribes the method, but with the sacred and inviolable right of the citizen under the Constitution itself to be heard at the ballot box, with a fair chance to express his choice upon the question whether or not he shall be taxed, which right is among the most important and valuable of those guaranteed by that instrument.

The glaring fault of the statute and its very dangerous tendency is found in section 5, which encourages a voter in a school district to vote for the county tax upon the promise held out that if it carried nothing shall be added to the tax in his district. Besides the objection that this appeals to his selfishness, the voter is thus allowed to impose a tax on others which cannot be imposed on himself. It may well be doubted if this kind of taxation is permissible under our Constitution. It is certainly wrong in principle and violates the rule of uniformity by taxing some and exempting others, the county tax and the school district tax being two separate and distinct forms of taxation. The question is not whether it appears that the township would have voted against the tax, but whether the voters in the township have had a fair opportunity to declare themselves upon the question of tax or no tax. Nor is it a question as to whether school facilities should be enlarged or extended, for that is a question of public policy and not one of law. Everybody, we presume, believes in general education and desires to extend as much aid as possible within the Constitution and the ability of the taxpayers to contribute to that most worthy cause, but whether this shall be done, as before said, is a question of policy and is administrative in its nature.

The ruling of the court below was erroneous, and is reversed, and the injunction will issue as prayed for in the complaint.

Reversed.

BROWN, J., concurring: I concur fully in the opinion of the Court by *Justice Walker* and in the concurring opinion of *Justice Allen.*

No member of this Court has ever permitted a legal technicality to stand in the way of public education. On the contrary, they have done all in their power to foster it, consistent with their oaths to support the Constitution, the paramount law of the State.

Article 9 of that instrument declares that "religion, morality, and knowledge, being necessary to good government and the happiness of

mankind, schools and the means of education shall forever be encouraged." The same article enjoined upon the General Assembly the duty of providing four-months public schools.

In construing that article in a notable case, this Court unanimously declared that it was never intended that the limitation upon taxation in articles 5 and 7 should thwart the provisions of article 9, providing for four-months free public schools. This decision unshackled the Legislature in dealing with them. *Collie v. Comrs.,* 145 N. C., 172. In rendering that decision, we were compelled to overrule two long standing decisions rendered by some of the ablest judges this State ever had.

While we are glad to advance the cause of education in any legitimate way, we cannot strike down other plain provisions of the Constitution intended for the just protection of the taxpayer and voter.

In construing article 7, section 7, of the Constitution, this Court, with unanimity, has declared in numerous cases that no special tax for school purposes can be levied by any county, city or town unless the proposition is submitted to and carried by a majority of the qualified voters. Connor & Cheshire on Const., p. 320.

The statute under review provides for an election to determine whether a special county-wide school tax shall be levied. It further provides, in substance, that if the county tax fails to carry, that the tax shall be levied in any township wherein a majority of the qualified vote is cast for the county-wide tax. No election was ordered or held to determine whether a township tax should be levied, but the voter who votes for a county-wide tax is legislatively presumed to have voted for a township tax. This is an unwarranted presumption, for many voters may have favored a county tax who were against a township tax. Thus the voter who desires a special tax levy by the county, but opposes it as a township levy exclusively, is constrained against his will to vote for the proposition to get any special tax whatever. If the county tax fails to carry, then the very thing he is opposed to comes to pass. But another fatal and insuperable omission is to be found. The act fails to provide any means whatever by which a voter who is opposed to a county tax, but favors the township tax, can register his will at the polls. If he desires to vote his convictions he cannot vote at all. One of the elemental principles of a legal election is that every voter must be afforded the opportunity of recording his vote on either side of the proposition. The statute fails in this respect.

I am aware that elections have been held under this statute in several counties. In my own native county of Beaufort an election was held to levy a county-wide special tax, and I made a special trip to my home to have the pleasure of voting for it. It is true that there was no complication in those counties, and the tax was levied, but that was because

the tax received the approval of the majority of the qualified voters of the county.

In Lenoir County a large majority voted against the tax as a county proposition, and only Kinston Township voted for it. But the voters of that township who favored a county tax, but were against an exclusive township tax, had their votes legislatively construed into favoring the latter, while those who opposed a county tax and favored a township tax had no opportunity to vote their real convictions.

Allen, J., concurring: There are, I think, two insuperable objections to an affirmance of the judgment:

(1) There was no opportunity given for the fair expression of the will of the voter. This question is fully covered in the clear and learned opinion of *Justice Walker,* and I do not care to do more than add one or two suggestions to what he has so well said. There was one ballot to be voted at the election, and that was for or against a *county tax.* A majority of the votes was against a county tax, and because a majority of the voters in Kinston Township was in favor of the *county tax,* this by legislative construction, is to be held a vote for a township tax. This method of submitting a question to the people is coercive, is calculated to mislead the voter, and does not tend to an open, honest and intelligent expression of the popular will. A voter who was in favor of a county tax and against a township tax could not record his opposition to a township tax without voting against his convictions by voting against a county tax, nor did a voter in favor of a township tax and against a county tax have any opportunity to vote, and the fact that near four hundred of the registered voters did not vote at all indicates that many belonged to one or other of these classes. Again, a mischievous and dangerous section of the act, under which the election was held, is section 5, which reads as follows: "That in case a majority of the qualified voters at said election in any township or in the entire county shall vote in favor of said special tax, on petition of a majority of the members of the board of trustees of the school committee of any existing special-tax district within said township or county so voting, the county commissioners shall reduce the annual special local-tax levy of said district by an amount not exceeding the special levy provided for the county or township under this act." This gave the opportunity to the voter of a school district having a special tax to cast their solid vote in favor of a tax on the rest of the county, with the absolute knowledge that they were not increasing taxes on themselves one cent because, immediately upon the county tax being voted, they could have this special tax decreased proportionately.

(2) The proposed tax is violative of the principle of uniformity of taxation required by the Constitution.

The tax which it is proposed to levy is on the property and polls of Kinston Township, but the school districts, which will receive the benefit of the tax, are not coterminous with the township lines. One district is within the township, another is composed of parts of Kinston and Vance townships, and still another has in it parts of Kinston, Falling Creek, Neuse and Southwest townships. The children of Vance, Falling Creek, Neuse and Southwest townships will have the right to attend the schools of their respective districts without charge, and they cannot be required to pay any part of the tax, because this can only be levied in Kinston Township, and this seems to me clearly in opposition to the principle that one section cannot be taxed for the benefit of another.

"The principle of uniformity in taxation forbids the imposition of a tax on one municipality or part of a State for the purpose of benefiting or raising money for another." *Faison v. Comrs.,* 171 N. C., 415, approved in *Hood v. Sutton,* 175 N. C., 100.

CLARK, C. J., dissenting: The election was held by virtue of chapter 71, Laws 1911, and there is no suggestion of any irregularity in the petition or order for election, or the advertisement thereunder, nor that the election was not in all respects fair and the propositions submitted were not fully understood.

Section 4 of the act provides that "if a majority at said election in any township of said county" shall vote in favor of the tax to supplement the school funds it shall be levied and collected to supplement the school funds of said township. It is not denied that a majority of the registered vote in said township was cast in favor of the measure. No one can question that they voted to tax Kinston Township for better schools if the measure failed for the county. It is immaterial, therefore, that those voting for said tax for township purposes also voted to extend the measure to the county, which latter measure failed to carry. The statute expressly provides that in such case the measure shall be valid for the township.

There is no proof that any voter voted for the township measure only because he was in favor of the county tax. On the contrary, it is more probable that some voted against the township tax because they were not in favor of the tax being extended to the entire county, for the taxable values in Kinston Township in proportion to the children therein is much greater than in the county at large, and the county measure would have had more probably the effect to deter some from voting for the township tax. However, that is merely a surmise, and there is abso-

lutely no proof that any voter for the township tax was influenced either way. However that may be, the manner of submitting the measure was entirely within the discretion of the Legislature. There is no provision in the Constitution which forbids the measure to be submitted as the Legislature provided, nor which confers upon the Court the right to set it aside because it may doubt the wisdom of submitting the measure in that form.

The only other objection upon which an injunction is asked against putting in force the measure adopted by the township, under the authority of the legislative act, is that a few children in the adjoining townships may participate in the benefit of the Kinston Graded School. There is nothing in our Constitution or our laws which invalidates the result of an election in which the people of a township have voted to tax themselves for the benefit of the public schools of the township because a few children from outside may attend and be benefited by the few weeks longer term. Kinston, like all other towns, is dependent for its prosperity upon the adjacent country, and if the children of such tributary territory shall receive a little added education it does not invalidate the election and will not injure Kinston. At the most, the injunction would lie, not to set aside the election, but to prohibit those children from attending the graded school for the few additional days— if any man in Kinston can be found to sue out proceedings for that purpose.

The public policy of our State is prescribed by the General Assembly. It is not for the courts to say whether a measure adopted by the General Assembly is the wisest or best in the judgment of the Court; that is a matter for the people acting through their representatives in the General Assembly. When there has been a compliance with the provisions of the statute, and there is, as in this case, no express provision of the Constitution forbidding such action, the question of its wisdom or the soundness of the public policy is not for consideration by the courts.

Ninety years ago this State, under the leadership of Judge A. D. Murphy and William A. Graham, began the policy of establishing public schools for the education of that large part of our people who were not able to send their children to private schools. Against the persistent opposition of those who were unwilling to be taxed "for the benefit of other people's children," as they styled it, the schools made slow headway. The Constitution of 1868 took a step forward by requiring a "four-months school" term, but the requirement was not fully carried out in the face of the reactionary opposition. A few years ago, under the leadership of Alderman, Aycock, Joyner, and McIver, more progressive legislation was enacted, most especially in favor of allowing

townships and other localities to vote additional taxes for better education. Under one of these acts the present election was held, and it would seem that technical objection should not be allowed to vitiate the will of the people of Kinston Township duly and regularly expressed at the ballot box.

Notwithstanding all that has been done by the friends of education, North Carolina and New Mexico stand at the foot of the list of forty-eight States in the percentage of illiteracy and in the shortness of school terms. That this does not command the approval of our people who are more progressive is shown by the fact that in the recent election, by more than one hundred thousand majority, an amendment to the Constitution was ratified to require "six-months schooling" for the children of the State.

The public policy of the State as declared by the people through their Legislature has always been more abreast with the spirit of the age than the opposition will admit. The Legislature has adopted prohibition and measures for better schools with longer terms, for good roads, for stock laws, for drainage and other progressive measures. At every step each of these measures has been met with objections from those who are opposed to modern methods and to the more general extension of the benefits of government to all the people. Whether this shall be done or not is a matter for the people themselves, who can express their wishes only through their chosen representatives in the law-making branch of the government.

The people of Kinston Township having by the requisite vote at an election held under the provisions of an act of the Legislature voted to tax themselves to lengthen their school terms and to extend their school facilities, it would seem that the courts ought not to interfere by injunction and forbid them to do so upon the allegation, without any proof possible, that a majority of the vote would not have been in favor of township taxation, if the Legislature had seen fit to provide that the proposition for county aid should be submitted on a separate ticket. Whether this should have been done or not was a matter for the Legislature, and not for the judgment of the courts. Nor should the fact that a few children outside of Kinston might enjoy the benefit of a few days extra schooling by paying for it—which is already the case in Raleigh, Charlotte, and probably every other town in the State—be held so vital a defect as to defeat the additional education which the people of Kinston have voted to tax themselves to give to their own children. If the additional education to the few children from outside the township who may attend the Kinston school is a serious wrong, even if they pay for it (of which Kinston should be relieved), this can be righted by an injunction against such children attending beyond the

time which they would have attended but for this extension—rather by setting aside and invalidating the benefits of the measure which the people of Kinston Township have voted for their own children attending their school.

This is a "government of the people, for the people and by the people," and when the people of Kinston, with their usual intelligence, have voted to tax themselves for longer school terms it is because they have deemed it wise and to their best interests. Of this they are the best judges. Their action should not be set aside because some other manner of submitting the question may be deemed more ideally and logically perfect.

The Constitution is a plain, practical instrument drawn up by the men who sat in the Convention of 1868, with some amendments since. It has no cryptic, occult or esoteric meaning. It was intended to be easily understood by all men. There is nothing to be found in it which forbids the Legislature to submit this proposition to the voters exactly in the terms in which it was submitted in this statute, nor is there any doubt that the intelligent voters of Kinston Township understood the meaning of the act, and that they voted according to their wishes. Under the authority of the statute they have cast their ballots for better schools for their children and longer terms, and this expression of their will should not be lightly set aside. If there is a constitutional provision which the Legislature and the people of that township have violated it has not been pointed out.

The manner of submitting the vote so as to apply to the county, or to one or more townships, as the popular will may determine, has been sustained in almost exactly similar cases by *Hoke, J.,* in *Keith v. Lockhart,* 171 N. C., 451, and by *Brown, J.,* in *Briggs v. Raleigh,* 166 N. C., 149, and cases therein cited. The fact that eighteen or twenty children in adjoining townships might enjoy the benefit of the longer term in Kinston Township cannot only be met by the parents of such children arranging to pay for the extra time, as is already done in several cases, but the township and the school district can be made coterminous by the County Board of Education, which can change the lines of the district at any time. Indeed this objection scarcely needs serious consideration.

Chapter 71, Laws 1911, under which this election was held, is not a local act recently passed for the benefit of Lenoir County, but it is a State-wide optional statute adopted nearly eight years ago, under which Wilson, New Hanover, and Beaufort, and probably other counties, and in Washington County the township of Plymouth, and townships in other counties have increased the length of their school term in accordance with an ever-growing public opinion in that direction. Section 5 thereof

has no sinister or mischievous purpose. It simply provides that any unit, whether county or township, adopting the increased appropriation for its public schools may subsequently reduce the amount back to not less than the original sum by application of the board of trustees or school committee thereof to the county commissioners to abate said special tax. The object of this is simply that if it is found that the special tax provides more funds than is required for any year, no more of it shall be collected than is found to be necessary. This is wise and businesslike, not mischievous, and cannot possibly affect or concern any one except the county or township which, on its own application, is thus permitted by the county commissioners to reduce the special tax it has voted for its schools.